*1145
 

 OPINION
 

 RODRIGUEZ, District Judge.
 

 This matter is before the court on several motions: (1) plaintiff United States of America’s (“USA-EPA”) motion for partial summary judgment on liability based on the Comprehensive Environmental Response, Compensation, and Liability Act (“CERCLA”), 42 U.S.C. § 9601
 
 et seq.;
 
 (2) plaintiffintervenor New Jersey Department of Environmental Protection’s (“NJDEP”) similar motion based on the New Jersey Spill Compensation and Control Act (Spill Act), N.J.SA. § 58:10-23.11
 
 et seq.;
 
 and (3) defendant Owens-Illinois, Inc.’s (“Owens-Illinois”) cross-motion for summary judgment on liability and divisibility of harm. The court, having considered the submissions of the parties, and for the reasons set forth below: (1) grants in part and denies in part plaintiffs motion for partial summary judgment; (2) grants in part and denies in part plaintiffintervenor’s motion for partial summary judgment; and (3) denies defendant’s motion for summary judgment.
 

 BACKGROUND
 

 The Lipari landfill occupies approximately six acres in Mantua Township. Toxic wastes, in both solid and liquid forms, were dumped there beginning in 1958 and ending in 1971 when the site was closed by the State of New Jersey. The site is currently listed on the National Priorities List (“NPL”) promulgated by the Environmental Protection Agency (“EPA”) pursuant to section 105 of CERCLA, 42 U.S.C. § 9605.
 

 After discovering and investigating the contamination at the Lipari site, the EPA issued several “Records of Decision” (“RODs”) requiring various clean-up responses, costs of the third ROD being the subject of the present motions. On August 3, 1982, the EPA issued its first ROD (“ROD I”), which required,
 
 inter alia,
 
 the installation of a containment system designed to reduce the flow of leachate and contaminated groundwater from the landfill. On September 30, 1985, the EPA issued its second ROD (“ROD II”), requiring the installation of a pump and treatment system designed to remediate the “on-site” contamination. On July 11, 1988, the EPA issued its third ROD (“ROD III”), requiring remedial actions to address the continuing “off-site” contamination from the landfill and to provide a permanent solution for the problems at the site.
 

 Pursuant to section 107 of CERCLA 42 U.S.C. § 9607, the EPA initiated suit on September 10, 1985 to recover the costs of implementing these clean-up efforts. The original complaint named Rohm & Haas Company, Inc. (“Rohm & Haas”), Owens-Illinois, CBS Records, Inc., Almo Tank Cleaning and Maintenance Corp., Ceneo, Inc., Manor Health Care Corporation and Marvin Jonas, Inc., as defendants. In January of 1986, NJDEP intervened pursuant to Section 104(e) of CERCLA 42 U.S.C. § 9604. In March of 1986, some of the defendants filed a third-party complaint against John Cucinotta, Joseph Cucinotta, Marvin Jonas, American Packaging Corp., AT & T Technologies, Inc., Continental Can Co., Crown Cork & Seal Co., Essex Chemical Corp., Firestone Tire and Rubber Co., the Borough of Glassboro, the Township of Mantua, NL Industries, Inc., Leski, Inc., NVF Co., Technitrol, Inc., and Nick Lipari. On July 28, 1988, the United States filed an amended complaint naming Triangle Publications, Inc., The Glidden Company, E.I. DuPont de Nemours & Co., Allied Paper, Inc., Owens-Coming Fiberglas Corp., SPS Technologies, Inc., The Gilbert Spruanee Company, Betz Laboratories, Inc., and Hercules, Inc. as additional defendants.
 

 According to the suit, defendants Rohm and Haas and Owens-Illinois are waste generators responsible for a large portion of the contamination at the Lipari site. Defendant Marvin Jonas is a waste hauler who allegedly disposed of waste at the Lipari site. The other defendants were waste generators considered to be
 
 de minimis
 
 contributors of waste to the Lipari site, meaning that their volumetric contribution to the contamination at the site was small in comparison with the contributions of the other defendants.
 

 On September 29, 1989, the court entered a partial consent decree with the
 
 de minimis
 
 defendants, essentially requiring them to pay $2.873 million in exchange for the plaintiffs’
 
 *1146
 
 promise not to sue for any of the cleanup costs associated with ROD I, ROD II, and ROD III. The decree also includes “reopen-er provisions” which permit plaintiffs to reopen the case against the
 
 de minimis
 
 defendants under certain circumstances.
 
 See United States v. Rohm and Haas,
 
 721 F.Supp. 666 (D.N.J.1989).
 

 A second consent decree required Rohm & Haas and Owens-Illinois, among others, to pay $52,519,375 plus interest
 
 [1]
 
 in exchange for the promise of the United States and the State of New Jersey not to sue or take administrative action in connection with the clean-up measures ordered in ROD I, ROD II, and two components of ROD III. Some of the cleanup measures ordered in ROD III are not covered by the agreement.
 

 In a third consent decree, Rohm & Haas agreed to perform the bulk of the off-site, ROD III remedies in exchange for the government’s compromise of their claims against them. This decree, the government contends, reflects a “rough sort of ‘allocation’ of liability for the universe of previously unsettled matters____” USA-EPA Br. in Supp. of Mot. for Summ. J. at 4. Indeed, this court found the allocation reasonable.
 
 See
 
 Opinion and Order (May, 17,1995) at 20.
 

 Soon thereafter, both USA-EPA and NJDEP filed motions for summary judgment in this court against Owens-Illinois based upon CERCLA and the Spill Act, respectively. Owens-Illinois responded with its own cross-motion for summary judgment based upon the principles of divisibility as applied by
 
 United States v. Alcan Aluminum Corp.,
 
 964 F.2d 252 (3d Cir.1993),
 
 on remand,
 
 892 F.Supp. 648 (M.D.Pa.1995),
 
 affd,
 
 No. 95-7570, 96 F.3d 1434 (3d Cir. Aug. 22, 1996). These are the motions presently before the court.
 

 DISCUSSION
 

 A.
 
 Standard of Review for Summary Judgment
 

 The entry of summary judgment is appropriate only when “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.” Fed. R.Civ.P. 56(e). An issue is “genuine” if it is supported by evidence such that a reasonable jury could return a verdict in the non-moving party’s favor.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is “material” if, under the governing substantive law, a dispute about it might affect the outcome of the suit.
 
 Id.
 
 In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the non-moving party.
 
 Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
 
 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
 

 The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.
 
 Id.
 
 at 324, 106 S.Ct. at 2553. The non-moving party may not rest upon mere allegations or denials of its pleadings.
 
 Id.
 
 “[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial.”
 
 Id.
 
 at 322, 106 S.Ct. at 2552.
 

 However, in deciding the motion, the court does not “weigh the evidence and determine the truth of the matter, but [instead] determine[s] whether there is a genuine issue for trial.”
 
 Anderson,
 
 477 U.S. at 249, 106 S.Ct. at 2511. If the non-movant has provided evidence exceeding the “mere scintilla” threshold in demonstrating a genuine issue of
 
 *1147
 
 material fact, the court cannot weigh the evidence and credit the movant’s interpretation of the evidence. This is so even if the movant’s evidence far outweighs the nonmovant’s evidence. Credibility determinations are the province of the fact-finder.
 
 Big Apple BMW, Inc. v. BMW of North America,
 
 974 F.2d 1358, 1363 (3d Cir.1992),
 
 cert. denied,
 
 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).
 

 Finally, “[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.”
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 at 276 (1986) (citations omitted).
 

 B.
 
 Liability of Owens-Illinois and Divisibility of Harm
 

 Both plaintiff USA-EPA and plaintiff-intervenor NJDEP have filed motions for summary judgment on liability under section 107 of CERCLA, 42 U.S.C. § 9607. NJDEP has also filed a similar motion under section 23.11g of the Spill Act, N.J.S.A. § 58:10-23.11g. In response, defendant Owens-Illinois has filed its own motion for summary judgment based on divisibility of harm. The different statutory frameworks require different analysis. Therefore, the court will address liability under each in turn.
 

 1.
 
 Liability Under CERCLA
 

 USA-EPA, in its motion for summary judgment,
 
 [2]
 
 claims that Owens-Illinois falls within the class of persons liable under CERCLA § 107, and thus seeks summary judgment on liability and declaratory judgment for future response costs. USA-EPA also seeks to have all stated affirmative defenses stricken. Owens-Illinois, on the other hand, seeks summary judgment in that a clear basis for divisibility is apparent from the facts. This court finds that Owens-Illinois does fall within the class of persons liable for removal and response costs under CERCLA § 107, but denies both parties’ motions to the extent that there is a genuine issue of material fact with respect to divisibility.
 

 a.
 
 Statutory Framework
 

 “Congress enacted CERCLA in December 1980 ‘[t]o provide for liability, comprehensive cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites.’ Pub.L. No. 96-510, Stat. 2767 (1980) (purpose clause). Congress was aware when it enacted CERCLA that the costs of cleanup would exceed the Fund established by section 221 of the statute---- Thus, dollars expended by the federal and state governments to clean up hazardous waste sites are, whenever possible, to be recovered from responsible parties through the liability scheme ... set forth in section 107____ Section 107 imposes liability on present site owners and operators, owners and operators at the time of disposal, and specified categories of generators and transporters of hazardous substances.”
 

 United States v. Kramer,
 
 757 F.Supp. 397, 410 (D.N.J.1991) (citations omitted) (quoting
 
 Kelley v. Thomas Solvent Co.,
 
 714 F.Supp. 1439, 1445 (W.D.Mich.1989)).
 

 CERCLA’s statutory framework provides liability for any (1) current owner or operator of a facility, (2) owner or operator of a facility at the time hazardous substances were disposed there, (3) person who arranged for disposal or arranged for the transport of hazardous substances for disposal, or (4) any person who accepts any hazardous substances for transport or disposal. 42 U.S.C.A § 9607(a) (West 1995). Those falling within the scope of this section can be held liable for “all costs of removal or remedial action” and “any other necessary costs of response incurred ... consistent with the national contingency plan [NCP],”
 
 id.,
 
 but only if (1) they are also found to have disposed of the hazardous substances at a “fácil
 
 *1148
 
 ity”
 
 [3]
 
 , (2) there is a “release”
 
 [4]
 
 or threatened release of the hazardous substances from the facility, and (3) the release causes the incurrence of “response” costs.
 
 [5]
 

 Id.; United Stales v. Alcan Aluminum Corp. (Alcan-Butler Tunnel)
 
 964 F.2d 252, 258-59 (3d Cir.1992),
 
 on remand,
 
 892 F.Supp. 648 (M.D.Pa.1995),
 
 affd,
 
 No. 95-7570, 96 F.3d 1434 (3d Cir.1996).
 

 Significant in CERCLA’s liability framework is the imposition of strict liability on those parties responsible for disposal of hazardous materials.
 
 Alcan-Butler Tunnel,
 
 964 F.2d at 259.
 
 See also
 
 42 U.S.C. § 9601(32) (imposing the strict liability standard found under the Clean Water Act, 33 U.S.C. § 1321). As a result, CERCLA includes no quantitative requirement in its definition of “hazardous substance.”
 
 Alcan-Butler Tunnel,
 
 964 F.2d at 259.
 
 See also
 
 42 U.S.C. § 9601(14). CERCLA’s plain meaning, legislative history, and jurisprudence support this conclusion.
 
 See Alcan-Butler Tunnel,
 
 964 F.2d at 260;
 
 Amoco Oil Co. v. Borden, Inc.,
 
 889 F.2d 664, 669 (5th Cir. 1989);
 
 City of New York v. Exxon Corp.,
 
 744 F.Supp. 474, 483 (S.D.N.Y.1990).
 

 As such, to support a finding of liability under CERCLA, we must determine whether Owens-Illinois (1) arranged for disposal, (2) of its hazardous substances, (3) at a facility from which there has been a release of hazardous waste or such a release is threatened. If so, we must also determine whether the release or threatened release (4) caused USA-EPA to incur response costs which were necessary and consistent with the NCP.
 

 The facts show that Owens-Illinois arranged for the disposal of waste from its Glassboro plant. Indeed, in its answers to interrogatories from a prior action involving the Lipari site, Owens-Illinois admitted “causing waste ... to be deposited at [Lipari] ... [f]rom approximately 1958 to December 1969____”
 
 See
 
 Ex. C-3, Owens-Illinois Answers to Zee Interrogs. at 12. In addition, various letters attached as exhibits indicate the existence of an arrangement by Owens-Illinois to use the Lipari site.
 
 See, e.g.,
 
 Ex. B-l, Lipari Dep. at Ex. O-l (Letter Agreement dated Apr. 1,1960).
 

 It is also clear that the arranged disposal was of hazardous substances found at the Lipari landfill. Throughout its pleadings and supporting briefs in this matter, Owens-Illinois repeatedly denies dumping any hazardous materials at the Lipari site. However, in prior litigation, Owens-Illinois admitted dumping the following materials, among others, in the Lipari landfill: keytones, lead chromates, xylene, and 1, 1, 1 triehloroethane.
 
 [6]
 

 See
 
 Ex. C-3, Owens-Illinois Answers to Zee Interrogs. at 12 and attached rider. All of these materials are listed by or contain materials listed by the EPA as toxic pollutants at 40 C.F.R. § 302.4 pursuant to 33 U.S.C. § 1317(a).
 
 [7]
 
 Additionally, we note that Owens-Illinois only cursorily refutes USA-EPA’s contention that lead and chromium were contained in their waste stream by stating that “there is no evidence in the
 
 *1149
 
 Administrative Record that [Owens-Illinois] caused a release of lead and/or chromium in the Off-Site Areas.” Owens-Illinois Opp. to USA-EPA Mot. for Summ.J. at 53-54. However, that statement is not accurate.
 
 [8]
 

 We feel that Owens-Illinois’ admissions allow USA-EPA to successfully demonstrate that hazardous substances were present in the waste stream disposed by Owens-Illinois at the Lipari site. Deposition testimony from the current matter, cited by Owens-Illinois in support of their repeated denials of dumping hazardous substances at the site, are too vague and inconclusory to provide otherwise.
 
 See, e.g.,
 
 Ex. B-9, Oliker Dep., at 146 (“As I remember, we were using trichloroethylene, and 1, 1, 1, trichloroethane replaced it at some time later. I don’t know when.”); Ex. B-4, Mecouch Dep., at 145 (“[Q.] Do you know the name triehloroethelyne? A. You could say any name. All I know is tri-something.”); Ex. B-14, LaRosa Dep., at 55 (“At this point, I can say that the storage area contained some buff materials, some coating materials, some thinners, some lacquers, but as to their numbers or names, I can’t give you that.”). However, these depositions support the conclusion that some of the toxics Owens-Illinois “admitted” dumping at Lipari were in fact used at the Glassboro plant between 1958 and 1971.
 
 See, e.g.,
 
 Ex. C-5, Meeoueh Dep. at 91-92 (xylene);
 
 id.
 
 at 90-91 (lead and chromates); Ex. C-9, Oliker Dep. at 62-65 (keytones);
 
 id.
 
 at 61-62 (lead and chromates); Ex. C-4, Mecouch Dep. at 122-24 (keytones). Since Owens-Illinois admits that the Lipari Landfill was the only site used for its Glassboro waste disposal,
 
 [9]
 
 it reasonably follows that Owens-Illinois disposed of those listed substances at Lipari. Nonetheless, Owens-Illinois failed to properly refute the dumping of lead and chromium at the site. As a result, USA-EPA has sufficiently carried its burden on this point.
 

 Additionally, we note that all of the substances which Owens-Illinois appears to have dumped at the Lipari site were found, at some level, in the off-site areas'. Indeed, Owens-Illinois’ own expert, in his report compiled from the administrative record, indicates the existence of lead,
 
 [10]
 
 chromium,
 
 [11]
 
 xylenes,
 
 [12]
 
 keytones,
 
 [13]
 
 and 1, 1, 1, trichloroethane
 
 [14]
 
 in the off-site areas. That these substances may have been detected at or below background levels or ARARs is not relevant for CERCLA § 107(a) liability. All that § 107(a) requires is that “the defendant ha[s] dumped his waste there and that the hazardous substances found in the defendant’s waste are also found at the site.”
 
 *1150
 

 United, States v. Wade,
 
 577 F.Supp. 1326, 1333 (E.D.Pa.1983),
 
 cited in Alcan-Butler Tunnel,
 
 964 F.2d at 265. We will consider the off-site levels
 
 infra
 
 for the purpose of divisibility analysis.
 

 The facts also show that Owens-Illinois’ waste was disposed at a facility from which there was a release or threatened release of hazardous substances. Owens-Illinois does not dispute that Lipari is a facility within the meaning of CERCLA, nor that some hazardous substances have been released from the site.
 
 See
 
 Ex. C-l, Owens-Illinois Resp. to USA-EPA Req. for Admis. ¶ 4, 5. As such, it is clear that this requirement of the statute is proven. Owens-Illinois’ dispute as to responsibility and/or liability for any of the releases is irrelevant here.
 

 Finally, the facts establish that the release or threatened release of hazardous substances from the Lipari site caused USA-EPA to incur response costs which were necessary and consistent with the NCP. Although Owens-Illinois contends that its waste was not the cause of USA-EPA’s asserted costs, finding a causal connection between Owens-Illinois’ wastes and USA-EPA’s costs is not required by the statute. CERCLA “imposes no such causation requirement, but rather requires that the plaintiff ... establish that the
 
 release
 
 or
 
 threatened release
 
 caused the incurrence of response costs; it underscores the difficulty CERCLA plaintiffs would face in the multigenerator context if required to trace the cause of the response costs to each responsible party.”
 
 Alcan-Butler Tunnel,
 
 964 F.2d at 264 (footnote omitted).
 
 See also id.
 
 at 266 (rejecting the argument that the government must prove that the emulsion deposited caused the release, and instead stating that “the Government must simply prove that the defendant’s hazardous substances were deposited at the site from which there was a release and that the
 
 release
 
 caused the incurrence of response costs”).
 

 As noted, Owens-Illinois has conceded that a release or threatened release has occurred at Lipari. The remaining elements require us to determine whether that release or threatened release caused USA-EPA to incur response costs which were necessary and consistent with the NCP. The defendants have the burden of proving that the costs are not consistent with the NCP.
 
 United States v. Marisol, Inc.,
 
 725 F.Supp. 833, 845 (M.D.Pa.1989). In this case, response costs were incurred by USA-EPA due to the release from the Lipari site. Among these costs which have yet to be recovered are
 

 the costs of studying the off-site areas, such as sampling, remedial investigations, and feasibility study costs; costs of performing the remedial design for the off-site clean up remedy; direct and indirect EPA and U.S. Department of Justice costs not resolved by prior consent decrees; and interest.
 

 Ex. A-2, Deel. of Ferdinand C. Cataneo at 9 ¶ 22. It is clear that some, if not all, of these costs are consistent with the NCP.
 
 See, e.g., Hatco Corp. v. W.R. Grace & Co.,
 
 849 F.Supp. 931 (D.N.J.1994) (assessment of cost effectiveness of expectation and removal costs was consistent with NCP). It is also clear that Owens-Illinois does not contend that all of the response costs incurred by USA-EPA were inconsistent with the NCP. Therefore, since Owens-Illinois has failed to carry its burden of proving inconsistency with the NCP, this facet of liability is met as well.
 

 Because we find that the above elements necessary to establish Owens-Illinois’ liability under CERCLA § 107(a) have been satisfied, we must necessarily move to a discussion of defenses to liability before we can grant either USA-EPA’s or NJDEP’s motion for partial summary judgment under CERCLA.
 

 b.
 
 Defenses to Liability
 

 Although liability may be established under § 107(a), affirmative defenses may be raised by defendants in a CERCLA action to avoid such liability.
 

 Owens-Illinois, in its answer to the complaint, states several affirmative defenses to liability.
 
 See
 
 Owens-Illinois Ans. to Second Amend.Compl. USA-EPA, on the other hand, seeks to have all these affirmative defenses stricken. After discussing the stan
 
 *1151
 
 dard for striking defenses, we will address each of them in turn.
 

 The standard for striking defenses is governed by Rule 12(f) of the Federal Rules of Civil Procedure.
 

 Rule 12(f) provides, in part: “Upon motion made by a party ... the court may order stricken from the pleading any insufficient defense.” Fed.R.Civ.P. 12(f). “All well-pleaded facts are taken as admitted on a motion to strike but conclusions of law or of fact do not have to be treated in that fashion. Matter outside the pleadings normally is not considered on a Rule 12(f) motion.” 5A Wright & Miller, Federal Practice and Procedure: Civil 2d (Federal Practice) § 1380, pp. 655-656 (1990).
 

 United States v. Kramer,
 
 757 F.Supp. 397, 409 (D.N.J.1991). Generally, such motions to strike are disfavored, but they are often granted where the insufficiency of the defense is clearly apparent.
 
 Id.
 
 (citing Wright & Miller,
 
 supra,
 
 § 1381, at 672-78). These motions, when granted, save “time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case.”
 
 Marisol,
 
 725 F.Supp. at 836 (citing
 
 United States v. Geppert Bros., Inc.,
 
 638 F.Supp. 996, 998 (E.D.Pa.1986)).
 

 With respect to defenses in CERCLA actions, this circuit has made it clear in its jurisprudence that non-§ 107(b) defenses are not available to defeat CERCLA liability. As noted by one court:
 

 “In keeping with this broad liability scheme, the only substantive affirmative defenses under CERCLA are those found in section 107(b). The exclusivity of section 107(b) defenses is explicitly discussed in section 107(a) which provides for liability ‘[notwithstanding any other provision or rule of law, and subject
 
 only
 
 to the defenses set forth in subsection (b) of this section.’ As a result of this unequivocal intent, a strong majority of courts have held that liability under CERCLA section 107(a) is subject only to the limited defenses provided in section 107(b).”
 

 Kramer,
 
 757 F.Supp. at 410 (citations omitted) (quoting
 
 Kelley v. Thomas Solvent Co.,
 
 714 F.Supp. 1439, 1445 (W.D.Mich.1989)) (emphasis in original).
 
 See also id.
 
 at 417-37 (striking all non-§ 107(b) defenses).
 

 Before turning to the merits of the individual defenses, we will address Owens-Illinois’ claim that all of its affirmative defenses must be preserved for the damages and contribution phase of this litigation. Owens-Illinois cites CERCLA § 113(f)(1) in support of this contention.
 
 See
 
 Owens-Illinois Opp. to USA-EPA Mot. for Summ.J. at 61. However, that section provides no such support. Under CERCLA § 113(f)(1), a liable party can seek contribution “from any other person who is liable or potentially liable under [§ 107(a) ].” 42 U.S.C.A. § 113(f) (West 1995). Furthermore, in doing so, a court “may allocate response costs among liable parties using such equitable factors as the court deems are appropriate.”
 
 Id.
 
 However, Owens-Illinois fails to state a § 113(f) crosselaim for contribution against USA-EPA in its answer to the second amended complaint.
 
 See
 
 Owens-Illinois Ans. to USA-EPA Second Amend.Compl. at 14. As a result, the § 113(f) remedy is not available to Owens-Illinois against USA-EPA. Therefore, this contention by Owens-Illinois is without merit.
 

 Now, we turn to a discussion of the propriety of the asserted defenses. Owens-Illinois’ first stated affirmative defense is the failure to state a claim upon which relief can be granted. However, as discussed earlier, USA-EPA has made out a prima facie case for liability under CERCLA § 107(a). Regardless, the complaint sufficiently states a claim for liability under § 107(a) by alleging that (1) the Lipari site is a “facility” within the meaning of CERCLA; (2) at which hazardous substances were disposed; (3) that there is contamination due to the release or threatened release of hazardous substances; and (4) that Owens-Illinois falls within one of the classes of responsible persons listed in § 107(a). USA-EPA Second Amend.Compl. at 6,13,14. Therefore, the defense of failure to state a claim is legally insufficient and will be stricken.
 

 Additionally, Owens-Illinois claims several equitable defenses to liability under CERCLA However, “the majority of courts, including this court, have rejected
 
 *1152
 
 equitable defenses to a section 107(a) cost recovery action as inconsistent with the explicit language of the statute and congressional intent.”
 
 Kramer,
 
 757 F.Supp. at 424.
 
 See also Smith Land & Improv. Corp. v. Celotex Corp.,
 
 851 F.2d 86, 90 (3d Cir.),
 
 cert. denied,
 
 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). Other jurisdictions agree with this principle.
 
 See, e.g., Kelley v. Thomas Solvent Co.,
 
 714 F.Supp. 1439, 1451 (W.D.Mich.1989);
 
 General Electric Co. v. Litton Business Sys., Inc.,
 
 715 F.Supp. 949, 955-56 (W.D.Mo.1989),
 
 affd,
 
 920 F.2d 1415 (8th Cir.1990),
 
 cert. denied,
 
 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991),
 
 reh’g denied,
 
 500 U.S. 911, 111 S.Ct. 1697, 114 L.Ed.2d 91 (1991). As a result, Owens-Illinois’ equitable defenses of estoppel, waiver, laches, and unclean hands will be stricken.
 

 Owens-Illinois also states the acts or omissions of third parties as defenses to CERCLA liability. CERCLA § 107(b)(3) specifically provides for such a defense, based on “[the] ‘complete absence of causation’ by defendant of the release or threatened release at the site.”
 
 Kramer,
 
 757 F.Supp. at 418. It exempts those defendants who can establish that they acted with due care, taking precautions against the foreseeable acts or omissions of an unrelated third party who was not an employee or agent of defendant and was the sole cause of the release or threatened release. 42 U.S.C. § 9607(b)(3). Courts have interpreted these statutory requirements strictly, striking those defenses which fail to conform in any respect.
 
 See Marisol,
 
 725 F.Supp. at 838-39;
 
 Kelley,
 
 714 F.Supp. at 1446.
 

 Owens-Illinois’ third party defenses, as drafted in their answer to the second amended complaint, do not comport with the requirements of § 107(b)(3) and will be stricken. Specifically, Owens-Illinois’ fourth affirmative defense states that any injury was caused by parties over whom Owens-Illinois “had no control.”
 
 See
 
 Owens-Illinois’ Answer to Second Amended Compl. at 10. Similarly worded defenses have been stricken simply for their lack of compliance with the allegation requirements of § 107(b)(3).
 
 Accord Marisol,
 
 725 F.Supp. at 838-39. Therefore, this third party defense shall be stricken.
 

 Owens-Illinois’ twelfth affirmative defense also states a third party defense.
 
 See
 
 Owens-Illinois Ans. to USA-EPA Second Amend.Compl. at 11. However, this defense also fails. CERCLA § 107(b)(3) specifically commands the defendant to establish that “he took precautions against foreseeable acts or omissions of any such third party and the consequences which could foreseeably result from such acts or omissions____” 42 U.S.C.A § 9607(b)(3)(b) (West 1995). Owens-Illinois makes no such allegation here. Therefore, under the above rationale, this defense will also be stricken.
 

 We caution, however, that Owens-Illinois’ use of the § 107(b)(3) defense is not an appropriate one. Congress created the defense to protect innocent parties, such as “innocent owners,” from liability. The language Congress used in drafting the section supports this conclusion.
 
 See
 
 42 U.S.C. § 9607(b)(3) (West 1995) (stating that liability will not accrue only if “the release or threat of release of a hazardous substance and the damage resulting therefrom were caused
 
 solely
 
 by ...”) (emphasis added). Congress did not intend the third party defense to be used by those parties, which include Owens-Illinois here, found to have generator liability under § 107(a) — a generator cannot, by definition, be innocent within the realm of CERCLA liability. To hold any other way would be wholly inconsistent with the framework Congress established in drafting CERCLA
 

 Next, Owens-Illinois asserts the affirmative defenses of due care and lack of causation with respect to the contamination. However, as previously discussed, CERCLA § 107(a) applies a strict liability standard— causation is irrelevant once a prima facie case is proven. Therefore, “ ‘defenses based upon claims by defendants that they were not negligent or that they exercised due care cannot be used to avoid liability.’ ”
 
 Kramer,
 
 757 F.Supp. at 419 (quoting
 
 United States v. Conservation Chemical Co.,
 
 619 F.Supp. 162, 204 (W.D.Mo.1985)).
 
 See also Marisol,
 
 725 F.Supp. at 840 (quoting the same language from
 
 Conservation Chemical).
 
 Due care is
 
 *1153
 
 only relevant in the context of the § 107(b)(3) defense. Accordingly, we will strike the defenses in which Owens-Illinois claims they exercised due care or were not the cause of harm.
 

 Owens-Illinois also states as affirmative defenses what we interpret as USA-EPA’s and NJDEP’s failure to enforce environmental laws, comply with CERCLA, provide notice, and mitigate damages. These defenses must fail as well. “CERCLA imposes no statutory or procedural prerequisites to bringing a section 107(a) response cost recovery action.”
 
 Kramer,
 
 757 F.Supp. at 420. Indeed, “[t]he liability provisions of section 107(a) are independent of requirements in other provisions of CERCLA”
 
 Id. See also Marisol,
 
 725 F.Supp. at 840-41;
 
 Kelley,
 
 714 F.Supp. at 1446-47 (striking defenses asserting lack of compliance and lack of notice). Therefore, Owens-Illinois’ defenses alleging failure to enforce environmental laws, comply with CERCLA, provide notice, and mitigate damages will be stricken.
 

 Several of Owens-Illinois’ affirmative defenses challenge the constitutionality of CERCLA and its retroactive application. However, the courts in this circuit agree that CERCLA and its retroactivity do not violate the due process, ex post facto, or bill of attainder provisions of the Constitution.
 
 See, e.g., Kramer,
 
 757 F.Supp. at 428-32;
 
 Marisol,
 
 725 F.Supp. at 845. Earlier litigation in this same matter seems to have drawn a similar conclusion.
 
 See United States v. Rohm & Haas,
 
 721 F.Supp. 666, 700 n. 41 (D.N.J.1989). Accordingly, these defenses will be stricken.
 

 Owens-Illinois alleges that USA-EPA’s CERCLA claims are barred by the statute of limitations. CERCLA’s statute of limitations provision for cost recovery actions is found at § 113(g)(2), which provides that, in a remedial action, any claim “must be brought within six years after initiation of on-site construction of the remedial action____” 42 U.S.C.A § 113(g)(2)(B) (West 1995). This section, added with the Superfund Amendments and Reauthorization Act of 1986 (“SARA”), operates prospectively only — “it has no retroactive application to claims occurring before its enactment on October 17, 1986____”
 
 Kramer,
 
 757 F.Supp. at 437.
 
 See also T & E Indus., Inc. v. Safety Light Corp.,
 
 680 F.Supp. 696, 704 (D.N.J.1988);
 
 Merry v. Westinghouse Elec. Corp.,
 
 684 F.Supp. 852, 857 (M.D.Pa.1988). Since the original complaint was filed on September 10, 1985, prior to the enactment of SARA, CERCLA’s statute of limitations does not bar this action. Additionally, even if applied retroactively, the statute of limitations would not be a bar. Because on-site construction of the remedial action commenced in the fall of 1983, the initial complaint in this matter was filed well within the six years CERCLA affords. Therefore, as a matter of law, the statute of limitations defense must be stricken.
 

 Owens-Illinois also states as its ninth affirmative defense that “[USA-EPA]’s claims are barred by the doctrine of merger.” Owens-Illinois Ans. to USA-EPA’s Second Amend.Compl. at 11. It is unclear what, exactly, Owens-Illinois means by this statement.
 
 [15]
 
 The only references found to “merger” in the CERCLA context deal with successor liability.
 
 See, e.g., SmithKline Beecham Corp. v. Rohm & Haas Co.,
 
 89 F.3d 154, 162-64 (3d Cir.1996);
 
 Beazer East, Inc. v. Mead Corp.,
 
 34 F.3d 206, 214 (3d Cir.1994);
 
 Elf Atochem N.A. v. United States,
 
 908 F.Supp. 275, 278 (E.D.Pa.1995);
 
 United States v. Atlas Minerals & Chemicals, Inc.,
 
 824 F.Supp. 46, 49-51 (E.D.Pa. 1993). Clearly, successor liability is not at issue in the matter at hand. Therefore, the merger defense will be stricken.
 

 Owens-Illinois also states as an affirmative defense that “test results and sample analyses were fraudulent and otherwise failed to meet acceptable QA/QC criteria.” Owens-Illinois Ans. to USA-EPA’s Second Amend. Compl. at 13. This defense is not viable. As USA-EPA correctly contends, Fed.R.Civ.P. 9(b) states that “[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particu
 
 *1154
 
 larity.” Fed.R.Civ.P. 9(b)- Clearly, Owens-Illinois’ defense, as stated, does not have the particularity which Rule 9(b) requires. On this point alone, the fraud defense fails. In addition, notwithstanding this lack of particularity, the defense, as alleged, sounds of the “failure to comply with CERCLA” defense which we have already discussed. As a result, this defense will be stricken.
 

 Also, assuming that the fraud alleged (or failed to be alleged) in this defense is the same fraud in testing referred to by Owens-Illinois in its opposition to NJDEP’s motion for summary judgment on Owens-Illinois’ claim for recoupment, the defense must fail.
 
 See
 
 Owens-Illinois Resp. to NJDEP Mot. at 11-12. There were allegations of fraud and irregularities in certain testing done by some government contractors with respect to the Lipari site.
 
 See
 
 Letter from Joseph Hurley, Sr. Atty, U.S. Dep’t of Justice, to Hon. John F. Gerry, U.S.D.J. (Jan. 3, 1991),
 
 in
 
 Aronds Certif. in Opp. to NJDEP Mot. for Summ.J., at Ex. A. However, it was USA-EPA who brought these “irregularities” to the attention of the parties. Additionally, according to Owens-Illinois’ own admissions, USA-EPA performed “supplemental sampling ... to rectify the fraud.” Owens-Illinois Opp. to NJDEP Mot. at 12. Clearly then, if this is the fraud to which Owens-Illinois refers, its ultimate remediation makes it clear that it cannot stand as a defense to CERCLA liability.
 

 Finally, Owens-Illinois states as its eleventh affirmative defense what appears to be one of divisibility of harm. The divisibility defense is not among the defenses listed under CERCLA § 107(b)(3). However, this is because divisibility of harm is not a defense to liability. Instead, it is a judicially crafted allocation principle designed to remediate the harshness of joint and several liability applied under CERCLA § 107(a) on those PRPs who have contributed a relatively lesser portion of hazardous substances to a CERCLA facility.
 
 United States v. Alcan Aluminum Corp. (Alcan-Oswego),
 
 990 F.2d 711, 721 (2d Cir.1993). Courts in this jurisdiction recognize divisibility as a valid affirmative defense.
 
 See Kramer,
 
 757 F.Supp. at 422-23;
 
 Marisol,
 
 725 F.Supp. at 841-42. So, apparently, does USA-EPA.
 
 See
 
 USA-EPA Br. in Supp. of Motion for Summ.J. at 53. Therefore, in light of the issues of fact with respect to divisibility discussed below, USA-EPA’s motion to strike this defense will be denied.
 

 Since all of Owens-Illinois’ affirmative defenses to liability under CERCLA § 107(a) have been stricken, and only divisibility of harm, a concept of apportionment, remains, we will also grant USA-EPA’s motion for declaratory judgment for future response costs under CERCLA § 113(g)(2). The explicit language of § 113(g)(2) appears to mandate this result.
 
 See
 
 42 U.S.C. § 9613(g)(2) (stating that “[i]n any such action described in this subsection, the court
 
 shall
 
 enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages”). The declaratory judgment does not determine damages or the allocation of same. Indeed,
 

 [i]n entering a declaratory judgment on liability, the Court is
 
 not
 
 making any determination regarding the amount or allocation of damages in this case. The Court reserves ruling on the issue of damages until a later date. Thus, the defendants] concern regarding the scope of the Court’s declaratory judgment is misplaced.
 

 Chatham Steel Corp. v. Brown,
 
 858 F.Supp. 1130, 1156 (N.D.Fla.1994).
 
 See also Kelley v. E.I. DuPont De Nemours & Co.,
 
 17 F.3d 836, 844 (6th Cir.1994).
 

 Now that we have determined Owens-Illinois’ liability under CERCLA and granted declaratory judgment for future liability, all that remains is a discussion of the propriety of the divisibility of harm defense in the present action.
 

 c.
 
 Divisibility of Harm
 

 Owens-Illinois, in its cross-motion for summary judgment, claims that a clear basis for divisibility exists. USA-EPA, in opposition, states that Owens-Illinois has not carried its burden with respect to divisibility and thus requests this court to impose joint and several liability. Because we feel that an issue of fact exists as to whether divisibility is war
 
 *1155
 
 ranted, we will deny both parties’ motions to the extent based on divisibility of harm.
 

 As discussed
 
 supra,
 
 CERCLA imposes strict liability on any PRP against whom a prima facie case is proven. When this lack of causation is combined with a lack of a quantitative threshold in the definition of hazardous substances, CERCLA appears to “impose liability on every generator of hazardous waste, although that generator could not, on its own, have caused any environmental harm.”
 
 Alcan-Butler Tunnel,
 
 964 F.2d at 267 (footnote omitted). Viewed another way, however, this harsh liability scheme works to protect the public interest in that
 

 it is entirely possible for a hazardous waste facility to be comprised of entirely small amounts from many contributors. If each PRP could make [Owens-Illinois’] argument, that its particular contribution did not warrant remediation and thus that it should not be liable for any costs,
 
 no
 
 party would be liable, despite the fact that the site, as a whole, needed to be cleaned up and the government incurred costs in doing so.
 

 United States v. Western Processing Co.,
 
 734 F.Supp. 930, 937 (W.D.Wash.1990),
 
 quoted in Alcan-Butler Tunnel,
 
 964 F.2d at 267-68.
 

 In light of the above, this circuit has adopted the Restatement (Second) of Torts approach to apportionment of liability in the CERCLA context. Accordingly, “when two or more joint tortfeasors acting independently cause a distinct or single harm for which there is a reasonable basis for division according to the contribution of each, each is subject to liability only for the portion of the harm that the individual tortfeasor has caused.”
 
 Alcan-Butler Tunnel,
 
 964 F.2d at 268 (citing Restatement (Second) of Torts § 433A). However, where the joint tortfeasors cause indivisible harm which cannot be apportioned on a reasonable basis, joint and several liability will apply.
 
 Id.
 
 at 268-69.
 

 The burden of proving this divisibility lies on the defendant. However, the analysis is necessarily a factually complex one, as it “require[s] an assessment of the relative toxicity, migratory potential and synergistic capacity of the hazardous waste at issue.”
 
 Id.
 
 at 269 (citing
 
 United States v. Monsanto Co.,
 
 858 F.2d 160, 172 n. 6 (4th Cir.1988);
 
 United States v. Chem-Dyne Corp.,
 
 572 F.Supp. 802, 811 (S.D.Ohio 1983)). In the procedural stance of summary judgment, however, a defendant “need only show that there are genuine issues of material fact regarding a reasonable basis for apportionment of liability.”
 
 Alcan-Oswego,
 
 990 F.2d at 722.
 

 We believe that the record in this ease presents sufficient factual issues to defeat a motion for summary judgment on divisibility. The expert reports of Dr. Medine, Dr. Greenberg, and Mr. Rovers, which all claim to be based on the administrative record, present an issue as to both the level of contaminants found at the off-site areas and their relative toxicity, migratory potential, and synergistic capacity.
 
 See
 
 Ex. E-l to E-5. Therefore, Owens-Illinois has not met its burden of proving that their waste stream, “could not,
 
 when mixed with other hazardous wastes,
 
 contribute to the release and resultant response costs____”
 
 Alcan-Butler Tunnel,
 
 964 F.2d at 270. To the contrary, the record appears to lean in the other direction.
 
 [16]
 
 Additionally, USA-EPA has not, to the satisfaction of this court, established that a material issue of fact does not exist with respect to divisibility. Therefore, to the extent that Owens-Illinois’ and USA-EPA’s motions for summary judgment hinge upon divisibility of harm, they will be denied.
 

 We hasten to point out, however, that “[Owens-Illinois’] burden in attempting to prove the divisibility of harm ... is substantial____”
 
 Alcan-Butler Tunnel,
 
 964 F.2d at 269. Such is especially the case in light of the multi-generator, multi-substance scenario we have before us with respect to the Lipari site. Since Owens-Illinois’ claims are those of zero liability, failure to bear this “substantial” burden may have dire consequences.
 
 See, e.g., United States v. Alcan Aluminum
 
 
 *1156
 

 Corp. (Alcav-Butler Tunnel II),
 
 892 F.Supp. 648 (M.D.Pa.1995) (holding that, in applying divisibility analysis, Alcan’s failure to properly allege and prove relative toxicity, migratory potential, and synergistic capacity upon claim of zero liability entitled the government to summary judgment),
 
 ajfd,
 
 No. 95-7570, 96 F.3d 1434 (3d Cir.1996).
 

 2.
 
 Liability Under the Spill Act
 

 In addition to its CERCLA claims, NJDEP moves for summary judgment on liability and future costs based upon the New Jersey Spill Compensation and Control Act (“Spffl Act”), N.J.S.A. § 58:10-23.11
 
 et seq.
 
 In response to this motion, Owens-Illinois claims that the divisibility analysis set forth above mandates that this motion be denied. However, because the Spffl Act is crafted differently and has been applied more strictly than CERCLA, we will grant NJDEP’s motion for summary judgment.
 

 Although drafted to remedy the same harms as CERCLA, the Spffl Act is a separate and distinct statutory scheme which requires its own analysis for application. With respect to liability for cleanup and removal costs, the Spffl Act provides that:
 

 Any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred.
 

 N.J.S.A. § 58:10-23.11g(c)(l) (West 1992 & Supp.1995). Unlike CERCLA, the Spffl Act is clear that liability is strict
 
 and
 
 joint and several in
 
 all
 
 cases, without regard to fault.
 
 See Department of Envtl. Protection v. Ventron Corp.,
 
 94 N.J. 473, 502, 468 A.2d 150 (1983). The Act was specifically amended in 1979 to include such language and remove any third party defense.
 
 See id.
 
 (historical note); 1979 N.J.Laws c. 346. This shows that the state legislature did not leave room for judicial case-by-case analysis which Congress desired in drafting CERCLA. As a result, the divisibility defense is not viable in Spffl Act cases.
 

 As previously discussed, Owens-Illinois has discharged hazardous substances at the Lipari site. Since that is all that the Spffl Act requires to find joint and several liability for any clean-up and removal costs, liability attaches under the Spffl Act. Contrary to the contentions of Owens-Illinois, the divisibility defense applicable in CERCLA cases is not applicable under the Spffl Act. No court applying the Spffl Act has applied the divisibility rationale.
 

 Owens-Illinois, in its opposition to NJDEP’s motion, makes several arguments against imposition of liability — all of which must fail. First, Owens-Illinois claims that NJDEP’s motion is premature because they have offered no proof of the incurrence of response costs. However, it is undisputed that USA-EPA has incurred costs. Also, CERCLA § 104(c)(3)(C) mandates that the state “pay or assure payment of ... 10 per centum [10%] of the costs of the remedial action, including all future maintenance____” 42 U.S.C.A. § 9604(e)(3)(C) (West 1995).
 

 Owens-Illinois argues that the Affidavit of Edward Putnam is inadmissible and thus, that NJDEP has offered no competent evidence to support its assertion that response costs have been incurred. Owens-Illinois bases this challenge on Mr. Putnam’s failure to indicate his personal knowledge of the facts contained therein and the failure to attach a copy of the supposed cost sharing agreement between USA-EPA and NJDEP. We find that although a copy of the agreement is not attached, Putnam does state that he is an Assistant Director in NJDEP, responsible for “review[ing] and approv[ing] Superfund State Contracts between NJDEP and [USA-EPA].” Putnam Aff. at 1 ¶2. Further, as stated above, CERCLA mandates that the states contribute 10% of the response costs incurred.
 
 See
 
 42 U.S.C. § 9604(c)(3)(C). Therefore, we find that the affidavit is sufficient to show that NJDEP had incurred at least some viable response costs.
 

 Owens-Illinois also claims that the motion is premature because NJDEP has not alleged that the costs were incurred in a manner consistent with the NCP. However, as NJDEP points out, such is not necessary for the purposes of a declaration of liability under the Spffl Act.
 
 See
 
 N.J.S.A. § 58:10-
 
 *1157
 
 23.11g(c) (West 1992 & Supp.1995). Owens-Illinois’ reliance on
 
 Hatco Corp. v. W.R. Grace & Co.,
 
 836 F.Supp. 1049 (D.N.J.1993), for this proposition is misguided. As Owens-Illinois states in its own opposition,
 
 Hateo
 
 required determination of the NCP compliance before deciding whether Hateo could recover on its
 
 contribution
 
 claim. Liability must necessarily be determined before reaching that stage.
 
 Hateo
 
 itself states that the only defenses to liability under the Spill Act are those listed in N.J.S.A. § 58:10-23.11g(d), which does not include failure to comply with the NCP.
 
 Hatco,
 
 836 F.Supp. at 1092-93.
 
 See also
 
 N.J.SA. § 58:10-23.11g(d). Therefore, this argument must also fail.
 

 As a result, we will grant NJDEP’s motion for summary judgment on liability and costs based on the Spill Act, and will also grant its motion based on CERCLA except for the question of divisibility.
 

 An appropriate order will be entered.
 

 [1]
 

 . Specifically, the decree required: (1) Rohm and Haas to pay $42,700,000, plus interest; (2) Owens-Illinois to pay $6,969,000, plus interest; and (3) the Manor Defendants to pay $2,633,375, plus interest.. The agreement details the method and time frame for payment of these amounts.
 

 [2]
 

 . NJDEP, in its own motion for summaiy judgment, incorporates and relies upon the argumente made by USA-EPA with respect to CERCLA liability.
 

 [3]
 

 . A facility is defined under CERCLA as:
 

 (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consume product in consumer use or any vessel.
 

 42 U.S.C.A. § 9601(9) (West 1995).
 

 [4]
 

 .
 
 See id.
 
 § 9601(22).
 

 [5]
 

 .
 
 See id.
 
 § 9601(25).
 

 [6]
 

 . Owens-Illinois has, throughout this litigation, denied having knowledge of the contents of its waste stream disposed at Lipari. However, in an order dated August 30, 1989, then Magistrate Judge Simandle, called such a denial
 

 especially troubling in light of the answers it gave ... in
 
 [Zee
 
 ]____ O-I will not be permitted to claim it had less knowledge and fewer records now than it did six years ago for these matters continuously in litigation. At the very least, the responses of O-I to [present interrogatories] raise a question of the good faith of OI in providing good faith discovery responses as required by Rule 26(g)____
 

 Subsequently, Owens-Illinois supplemented its answers to Rohm
 
 &
 
 Haas' interrogatories to incorporate the
 
 Zee
 
 responses.
 
 See
 
 Ex. C-2 at 2.
 

 [7]
 

 . Although promulgated under the Clean Water Act, CERCLA § 101(14), in its definition of "hazardous substance,” explicitly incorporates this section.
 
 See
 
 42 U.S.C. § 9601(14).
 

 [8]
 

 . Lead was one of the toxics which Owens-Illinois previously admitted dumping in the Lipari site during the relevant time frame.
 
 See
 
 Ex. C-3, Owens-Illinois Answers to Pi's Interrogs.,
 
 Zee v. Lipari,
 
 Superior Ct. of NJ, Ch. Div, Docket No. C-3902-80 (Dec. 24, 1983), at 12 & attached rider. Owens-Illinois argues that subsequent discovery allows them to withdraw or amend these answers, and that such are not admissions but only evidence to be weighed by a finder of fact. Even so, the existence of the admissions refutes Owens-Illinois' contentions that there is no evidence in the record which supports their disposal of lead or chromium at Lipari.
 
 See also
 
 Ex. B-5, Mecouch Dep. at 91. Therefore, Owens-Illinois has not created an issue of fact with respect to these substances sufficient to defeat a motion for summary judgment.
 

 [9]
 

 .
 
 See
 
 Ex. C-7, Owens-Illinois Answers to Lipari Interrogs. at 1 ("Owens-Illinois replies that it does not have any records indicating that the Glassboro plant deposited waste and/or hazardous waste at any other disposal sites between 1958 and 1971.”).
 

 [10]
 

 .
 
 See, e.g.,
 
 Ex. E-4, Rovers Rep. at tables B.2 (Marsh soils), B.3 (same), C.2 (Rabbit Run surface water), C-5 (Rabbit Run sediments), D.2 (Chestnut Branch surface water), D.7 (Chestnut Branch sediments), E.2 (Alcyon Lake surface water), E.10 (Alcyon Lake sediments).
 

 [11]
 

 .
 
 See, e.g.,
 
 Ex. E-4, Rovers Rep. at tables B.2 (Marsh soils), C.2 (Rabbit Run surface water), C.5 (Rabbit Run sediments), D.2 (Chestnut Branch surface water), D.7 (Chestnut Branch sediments), E.10 (Alcyon Lake sediments).
 

 [12]
 

 .
 
 See, e.g.,
 
 Ex. E-4, Rovers Rep. at tables B.2 (Marsh soils), B.3 (same), B.7 (Marsh groundwater), C.3 (Rabbit Run surface water); E.3 (Alcyon Lake surface water)
 

 [13]
 

 .
 
 See, e.g.,
 
 Ex. E-4, Rovers Rep. at tables B.2 (Marsh soils), B.7 (Marsh groundwater), C.6 (Rabbit Run sediments), D.5 (Chestnut Branch surface water), E.3 (Alcyon Lake surface water), E. 14 (Alcyon Lake sediments).
 

 [14]
 

 .
 
 See, e.g.,
 
 Ex. E-4, Rovers Rep. at tables C.5 (Rabbit Run sediments), D.7 (Chestnut Branch sediments).
 

 [15]
 

 . USA-EPA apparently agrees with this assessment.
 
 See
 
 USA-EPA Br. in Supp. of Mot. to Strike at 45 n. 17.
 

 [16]
 

 .
 
 See
 
 Ex. D-5, ROD III ESD at 2 ("Treatability studies demonstrate that thermal treatment can reduce bis(2-chloroethyl) ether (BCEE),
 
 and other organic contaminants including volatile organic compounds (VOCs),
 
 to acceptable levels for placement on Alcyon Racetrack.”) (emphasis added).