STATE OF CALIFORNIA DEPART-
MENT OF TOXIC SUBSTANCES
CONTROL, Plaintiff,

v.

ALCO PACIFIC, INC., Morris P. Kirk,
Allied Precious Metals Recycling
Company, Inc., Davis Wire Corpora-
tion, Exide Technologies, P. Kay Met-
al Supply, Inc., Lead Products Compa-
ny, Inc., Pasminco, Incorporated,
Quemetco, Inc., RSR Corporation, J.L.
Shepherd and Associates, and Does 1
through 10,m includsive, Defendants.

No. CV.01–09294 MMM (FMOx).

United States District Court,
C.D. California.

July 9, 2002.

Bill Lockyer, Attorney General of the State of California, Theodora Berger, Senior Assistant Attorney General, Donald A.

Robinson, Supervising Deputy Attorney General, Sean B. Hecht, Deputy Attorney General, California Department of Justice, Los Angeles, for State of California Department of Toxic Substances Control.

Charles H. Pomeroy, Michael Stiles, McKenna Long & Aldridge LLP, Los Angeles, CA, for Morris P. Kirk & Defendant Alco Pacific, Inc.

Michele B. Corash, James M. Schurz, Aaron P. Avila, Esq., Morrison & Foerster LLP, San Francisco, CA, for Exide Technologies.

Coralie Kupfer, Kupfer Law & Mediation, Pasadena, CA, for P. Kay Metal Supply, Inc.

Gordon A. Greenberg, Chris M. Amantea, Brandon Roker, McDermott, Will & Emery, Los Angeles, CA, for Quemetco, Inc., RSR Corporation.

Colin Lennard, Patricia J. Chen, Fulbright & Jaworski L.L.P., Los Angeles, CA, for Lead Products Company, Inc.

Gary A. Hamblet, Rebecca S. Glos, Breidenbach, Buckley, Huchting & Hamblet, A Law Corporation, Los Angeles, CA, for J.L. Shepherd & Associates.

Walt Stringfellow, Lisa Schwartz Tudzin, Stringfellow & Associates, Los Angeles, CA, for PASMINCO Incorporated.

Mark A. Bilut, Todd Wiener, McDermott, Will & Emery, Chicago, IL, for Davis Wire Corporation.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE DEFENSES PLEADED IN VARIOUS DEFENDANTS' ANSWERS, DEFENDANT J.L. SHEPHERD AND ASSOCIATES' JURY DEMAND, AND DEFENDANTS' REQUESTS FOR ATTORNEYS' FEES

MORROW, District Judge.

This is a cost recovery action brought by the State of California, Department of Toxic Substances Control, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). The State seeks reimbursement of the costs it has incurred cleaning the site of a former lead processing facility in Carson, California, as well as a declaration that it is entitled to recoup any costs it may incur in the future. Eleven defendants have answered the complaint; the State now moves to strike various affirmative defenses asserted by eight of the eleven on the grounds that the defenses pled are unavailable under the governing statutory framework. The State also seeks to have the jury demand made by defendant J.L. Shepherd and Associates stricken on the basis that there is no statutory or constitutional right to jury trial in a CERCLA case. With the exceptions discussed *infra*, the court concludes that the challenged defenses are insufficient as a matter of law. It thus orders them stricken, and directs defendants to file amended answers to plaintiff's complaint within twenty days of the date of this order. The court further concludes that there is no right to jury trial in CERCLA actions and strikes Shepherd's jury demand as a result. The court grants the State's motion to strike defendants' prayer for attorneys' fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action concerns a parcel of real property in Carson, California, known as the Alco Pacific site. A lead reprocessing business operated on the site from approximately 1950 to 1990,[1] which reclaimed lead

---

1. Complaint For Recovery Of Response Costs And Declaratory Relief Under CERCLA ("Complaint"), ¶ 2.

from various lead-containing materials generated by other parties and delivered to the site.[2] The State alleges that surface soil sampling revealed a number of hazardous chemicals present at the site above maximum allowable levels.[3] As a result, it undertook clean-up at the site, and now seeks to recover the costs it has incurred to date, as well as future remediation costs.

Plaintiff Department of Toxic Substances Control ("DTSC") is a department of the State of California.[4] Defendant Morris P. Kirk has owned and operated the Alco Pacific site at all times since 1972. Defendant Alco Pacific, Inc., a defunct corporation, owned and operated the site at the time hazardous wastes were delivered and treated there. The complaint alleges that the hazardous substances that have been found at the site were released while it was owned and operated by Alco Pacific and Kirk.[5] The remaining defendants purportedly arranged for the delivery and treatment of the substances.[6]

The complaint contains a single claim for relief under CERCLA. DTSC seeks recovery of at least $851,840 in response costs incurred as of the filing of the complaint. It seeks to impose liability for this amount against defendants jointly and severally pursuant to 42 U.S.C. § 9607.[7] DTSC also requests that the court declare that defendants are jointly and severally liable for any future response costs or damages incurred due to the release of hazardous substances at or from the Alco Pacific site pursuant to 42 U.S.C. § 9613(g)(2).[8]

Each defendant has answered the complaint and asserted various affirmative defenses.[9] DTSC has moved to strike certain defenses it contends are not available under CERCLA. It also requests that the court strike defendant Shepherd's jury trial demand and all defendants' prayer for attorneys' fees, on the basis that these too are not available under CERCLA.[10]

## II. DISCUSSION

### A. Legal Standard Governing Motions To Strike Pursuant to Rule 12(f)

Rule 12(f) provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED.R.CIV.PROC. 12(f). To show that a defense is "insufficient," "the moving party must demonstrate that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." *Securities & Exchange Comm'n v. Sands*, 902 F.Supp. 1149, 1165 (C.D.Cal. 1995). " 'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.... 'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) (citing 5A Charles A. Wright & Arthur R. Miller,

---

2. *Id.,* ¶ 18.

3. *Id.,* ¶ 20.

4. *Id.,* ¶ 5.

5. *Id.,* ¶ 21.

6. *Id.,* ¶¶ 8–17.

7. *Id.,* ¶ 32.

8. *Id.,* ¶ 33.

9. Plaintiff voluntarily dismissed defendant Allied Precious Metals Recycling Company, Inc. on February 11, 2002.

10. Of the remaining ten defendants, only Davis Wire Corporation and Pasminco, Inc. are not involved in the present motion.

FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d, § 1382, pp. 706–07, 711 (1990)), rev'd. on other grounds by *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). "Redundant" allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action. *Gilbert v. Eli Lilly Co., Inc.,* 56 F.R.D. 116, 121, n. 4 (D.P.R. 1972).

Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic. See *Lazar v. Trans Union LLC,* 195 F.R.D. 665, 669 (C.D.Cal.2000); *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1478 (C.D.Cal.1996); *Colaprico v. Sun Microsystems, Inc.,* 758 F.Supp. 1335, 1339 (N.D.Cal.1991). See also *United States v. 729.773 Acres of Land, Etc.,* 531 F.Supp. 967, 971 (D.Haw.1982) ("a motion to strike is a severe measure and it is generally viewed with disfavor"). Given their disfavored status, courts often require "a showing of prejudice by the moving party" before granting the requested relief. *Sands, supra,* 902 F.Supp. at 1166 (citations omitted). The possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw "unwarranted" inferences at trial is the type of prejudice that is sufficient to support the granting of a motion to strike. See *Fogerty, supra,* 984 F.2d at 1528 (holding that the district court properly struck lengthy, stale and previously litigated factual allegations in order to the streamline action).

Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court. *Fantasy, supra,* 984 F.2d at 1528. In exercising its discretion, the court views the pleadings in the light most favorable to the non-moving party (see *In re 2TheMart.com Securities Litigation,* 114 F.Supp.2d 955, 965 (C.D.Cal.

2000)), and resolves any doubt as to the relevance of the challenged allegations or sufficiency of a defense in defendant's favor. This is particularly true if the moving party can demonstrate no resulting prejudice. *Wailua Assocs. v. Aetna Casualty and Surety Co.,* 183 F.R.D. 550, 553–54 (D.Haw.1998) ("Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation; if there is any doubt as to whether under any contingency the matter may raise an issue, the motion may be denied ...."). See also *Dah Chong Hong, Ltd. v. Silk Greenhouse, Inc.,* 719 F.Supp. 1072, 1073 (M.D.Fla. 1989); *United States v. $200,226.00 in U.S. Currency,* 864 F.Supp. 1414, 1421 (D.P.R. 1994). "Even when the defense presents a purely legal question, ... courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits." 5 Charles Wright & Arthur Miller, FEDERAL PRACTICE & PROCEDURE, § 1381, at pp. 800–01. See *Sands, supra,* 902 F.Supp. at 1166.

Despite the disfavored nature of motions to strike, and the strict standards applied, courts often strike affirmative defenses in CERCLA actions pursuant to Rule 12(f). See, e.g., *United States v. Atlas Minerals & Chemicals, Inc.,* 797 F.Supp. 411, 413–14 (E.D.Pa.1992) (citing *Kelley v. Thomas Solvent Co.,* 714 F.Supp. 1439, 1442 (W.D.Mich.1989)); see generally *United States v. Rohm and Haas Co.,* 939 F.Supp. 1142 (D.N.J.1996); *United States v. Pretty Products, Inc.,* 780 F.Supp. 1488 (S.D.Ohio 1991); *United States v. Kramer,* 757 F.Supp. 397 (D.N.J.1991) ("*Kramer I* ").

## B. Affirmative Defenses To CERCLA Cost Recovery Actions

■ DTSC contends that several of the affirmative defenses asserted by defendants are unavailable under CERCLA as a

matter of law. 42 U.S.C. § 9607(a) imposes liability for the costs of removal and remediation of hazardous wastes "subject only to the defenses set forth in subsection (b) of this section." Section 9607(b) provides that

"[t]here shall be no liability under subsection (a) ... for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by ... (1) an act of God; (2) an act of war; and (3) an act or omission of a third party other than an employee or agent of the defendant or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant ..., if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or (4) any combination of the foregoing paragraphs." 42 U.S.C. § 9607(b).[11]

Liability is strict, without regard to fault, and is imposed jointly and severally unless a defendant can demonstrate that the harm is "divisible." See *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 870–71 (9th Cir.2001) ("CERCLA 'generally imposes strict liability on owners and operators of facilities at which hazardous substances were disposed.' ... To achieve that end, CERCLA 'authorizes private parties to institute civil actions to recover the costs involved in the cleanup of hazardous wastes from those responsible for their creation.' ... Once liability is established, the defendant may avoid joint and several liability by establishing that it caused only a divisible portion of the harm—for example, it contributed only a specific part of the hazardous substances that spilled"); *Centerior Service Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 348 (6th Cir.1998) ("Liability for cost recovery actions brought against [potentially responsible parties 'PRPs'] under § 107(a) is strict.... Liability is also generally joint and several on any defendant PRP regardless of fault.... Only if a defendant can affirmatively demonstrate that the harm is divisible, will damages from a cost recovery action brought pursuant to § 107(a) be apportioned according to fault"). Given the limited nature of the defenses available, DTSC contends defenses other than those enumerated in § 9607(b) should be stricken from defendants' answers so as to narrow the issues to those properly before the Court.[12]

### 1. Apportionment Defenses

■ Each defendant whose answer is challenged has asserted an affirmative de-

---

11. In addition to the defenses enumerated in § 9607(b), CERCLA provides for certain other defenses, viz., the statute of limitations. See *Blasland, Bouck & Lee, Inc. v. City of North Miami*, 283 F.3d 1286, 1304 (11th Cir.2002) ("Section 107(a) imposes liability '[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this chapter.' Although this statement may be contradicted by other defenses provided elsewhere in the statute, that does not mean this Court has the same power as Congress to create exceptions to section 107(a)'s bar on other defenses based on our own sense of what would be good policy. The plain language of section 107 indicates that Congress wanted defenses to suits brought by an innocent party to be narrowly circumscribed").

12. DTSC's Memorandum of Points and Authorities In Support of Motion to Strike ("Pl.'s Memo."), 4:1–15.

fense based on "apportionment," which alleges that any damages awarded against it should be based on its proportionate share of liability for the contamination. DTSC contends that, other than the recognized defense of "divisibility," apportionment is not a recognized defense to CERCLA liability, but rather an issue that must be raised by bringing a contribution action against other PRPs. As the Sixth Circuit has stated, a plaintiff "bringing a cost recovery action ... must prove only that each defendant is a 'liable' party and not that defendants are responsible for a certain share of the plaintiff's response costs. Only if a defendant can affirmatively demonstrate that the harm is divisible, will damages from a cost recovery action brought pursuant to § 107(a) be apportioned according to fault." *Centerior Service, supra,* 153 F.3d at 348; see also *United States v. Hercules, Inc.,* 247 F.3d 706, 718 (8th Cir.2001) ("[T]he divisibility doctrine is conceptually distinct from contribution or allocation of damages"); *United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 722 (2d Cir.1993) (recognizing the "common law gloss" that courts have placed on CERCLA strict liability by adding divisibility to the statutory framework of joint and several liability).

None of the defendants disputes this general statement of the law nor argues that it is entitled to assert apportionment as a defense separate and apart from divisibility. Defendants Exide and Shepherd argue, however, that their apportionment defenses should not be stricken because they are related to their divisibility defenses, i.e., if the harm is found to be divisible, it will have to be apportioned according to

relative fault.[13] DTSC does not challenge any defendant's divisibility defense, however, and it is difficult to determine how apportionment defenses will add to already asserted divisibility defenses.[14]

Certain defendants argue that their apportionment defenses should be "deemed" to be contribution cross-claims against their co-defendants in order to simplify proceedings.[15] Defenses asserted against DTSC are not cross-claims against co-defendants, however, and clarity in the proceedings will be enhanced if those defendants that wish to assert contribution cross-claims do so explicitly, naming all parties they wish to denominate cross-defendants.

■ With these general principles in mind, the court will examine each of the defenses that DTSC characterizes as "apportionment defenses" in defendants' answers. In *Kramer I, supra,* the court concluded that certain defenses raising apportionment issues should be stricken, while others should be retained, as they pleaded elements of a divisibility defense. Specifically, the court concluded that defenses asserting there was "a reasonable basis for apportionment" of liability should not be stricken, as defendant must demonstrate there is such a basis in order to succeed on a divisibility defense. *Kramer I, supra,* 757 F.Supp. at 422. See generally *United States v. Hercules, Inc.,* 247 F.3d 706, 717 (8th Cir.2001) ("The universal starting point for divisibility of harm analyses in CERCLA cases is the Restatement (Second) of Torts, which provides for the apportionment of damages among two or more parties when at least one is able

---

**13.** Exide's Opposition, 3:19–4:7.

**14.** Pl.'s Reply, at 5, n. 6. As DTSC acknowledges, each defendant has separately asserted divisibility as a defense, and all such defenses will remain if the court grants the motion to strike.

**15.** See, e.g., Lead Products' Opposition, 3:22–4:5; RSR and Quemetco's Joinder in J.L. Shepherd's Opposition, 2:13–16.

to show either (1) 'distinct harms' or (2) a 'reasonable basis for determining the contribution of each cause to a single harm,'" quoting RESTATEMENT (SECOND) OF TORTS, § 433A (1965)); *United States v. Township of Brighton*, 153 F.3d 307, 319 (6th Cir.1998) ("...we reiterate that divisibility is appropriate only in those cases where causation is apportionable on a reasonable basis"). Certain of the defenses challenged by plaintiff plead that there is a reasonable basis for apportioning liability among the responsible parties.[16] Each party that has pleaded such a defense has also pleaded a divisibility defense that does not make specific reference to this element of the necessary proof. Following the reasoning of the *Kramer I* court, the court declines to strike these affirmative defenses, which it construes as part of defendants' effort to raise a divisibility defense to liability. Other defenses characterized as "apportionment defenses" by plaintiff in fact assert that DTSC has failed to mitigate damages or to give notice to defendant of the contamination.[17] The court addresses these defenses *infra* as mitigation/failure to give notice/contribution by plaintiff defenses.[18]

■ Finally, Exide has alleged that, "[t]o the extent plaintiff is a liable party under ... § 9607(a)," it cannot recover its response costs and may not assert that defendants are jointly and severally lia-

ble.[19] In *United States v. Hunter*, 70 F.Supp.2d 1100 (C.D.Cal.1999), Judge Paez held that, even if it is a PRP, the government may bring a cost recovery suit under § 9607(a) that seeks to impose joint and several liability on defendants. Defendants may, in turn, assert a contribution action against the government in its role as PRP. *Id.* at 1107. Other courts have reached similar results. See, e.g., *United States v. Chrysler Corp.*, 157 F.Supp.2d 849, 859–60 (N.D.Ohio 2001) (holding that the National Park Service could seek full cost recovery and was not limited to a contribution action even though it was the site operator and a PRP); *Kramer I, supra*, 757 F.Supp. at 414 (holding that the federal government could proceed under § 9607 despite being a PRP); *United States. v. Western Processing Co.*, 734 F.Supp. 930, 939–40 (W.D.Wash.1990) (holding that the federal government, as a former site operator, could nonetheless seek full cost recovery). For this reason, the court concludes that Exide's defense must be stricken. DTSC's liability as a PRP can be raised, if appropriate, by way of a contribution action under § 9613.

For the reasons stated earlier, the court strikes the balance of the "apportionment defenses" asserted by defendants.[20] See *Richmond, Fredericksburg and Potomac Railroad Company v. Clarke*, Civ. A. No. 90–00336, 1991 WL 321033, * 4–5 (E.D.Va.

---

**16.** See Exide's Answer, Eleventh Affirmative Defense, ¶ 11; Lead Products' Answer, Fifth Defense, ¶ 38; Quemetco's Answer, Fourth Affirmative Defense, ¶ 4; RSR's Answer, Fourth Affirmative Defense, ¶ 4; Alco Pacific's Answer, Fourth Affirmative Defense, ¶ 4; Kirk's Answer, Fourth Affirmative Defense, ¶ 4; J.L. Shepherd's Answer, Affirmative Defenses, ¶ 6.

**17.** See Exide's Answer, Seventh Affirmative Defense, ¶ 7; P. Kay Metals Answer, Ninth Affirmative Defense, ¶ 45; Quemetco's Answer, Sixth Affirmative Defense, ¶ 6; RSR's Answer, Sixth Affirmative Defense, ¶ 6; Alco

Pacific's Answer, Sixth Affirmative Defense, ¶ 6; Kirk's Answer, Sixth Affirmative Defense, ¶ 6; J.L. Shepherd's Answer, Affirmative Defenses, ¶ 9.

**18.** See *infra* at 1040–41.

**19.** See Exide's Answer, Ninth Affirmative Defense, ¶ 9.

**20.** See Exide's Answer, Third, Sixth, Ninth Affirmative Defenses, ¶¶ 3, 6, 9; P. Kay Metals Answer, Third, Tenth Affirmative Defenses, ¶¶ 36, 44; J.L. Shepherd's Answer, Affirmative Defenses, ¶ 7.

Jan.22, 1991) (striking an apportionment defense, *inter alia,* because it was not available under CERCLA). Each defendant is directed to an amended answer eliminating such defenses within twenty days of the date of this order.

## 2. Duty/Causation Defenses

Each defendant has also asserted a defense based on causation or duty, either its own or DTSC's.[21] Plaintiff contends that, because CERCLA is a strict liability statute, liability is assigned without regard to fault and negligence-based defenses will not lie. A number of courts have recognized this principle. See, e.g., *Alcan Aluminum Corp., supra,* 990 F.2d at 721 ("[I]t seems plain that in addition to imposing a strict liability scheme, CERCLA does away with a causation requirement"); *United States v. Monsanto Co.,* 858 F.2d 160, 167 (4th Cir.1988) (rejecting defenses because the "elements of tort culpability on which the site-owners rely simply are absent from the statute"); *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir.1985); (holding that "Congress specifically rejected including a causation requirement" in § 9607); *United States v. Marisol, Inc.,* 725 F.Supp. 833, 838–40 (M.D.Pa.1989) (finding that "claims

by defendants that they were not negligent or that they exercised due care cannot be used to avoid liability" and that the defense "that the third party was the proximate cause" of the contamination was insufficient because it failed to plead that the third party was "totally unrelated" to defendant as required by CERCLA).[22]

Courts have also rejected negligence on the part of the government as a defense to liability. See *Atlas Minerals, supra,* 797 F.Supp. at 415 ("[A]lleged negligence on the part of the EPA cannot serve as a defense to CERCLA liability," citing *In re Paoli Railroad Yard PCB Litigation,* 790 F.Supp. 94, 96–97 (E.D.Pa.1992)) (noting that the only governmental action that may reduce a defendant's liability is that which is shown "to be inconsistent with the National Contingency Plan"); *United States v. Skipper,* 781 F.Supp. 1106, 1112 (E.D.N.C.1991) ("Congress specifically considered and rejected an amendment proposed by Senator Helms that would have added government misconduct and negligence as a separate defense to CERCLA liability"); *Kramer I, supra,* 757 F.Supp. at 419 ("the defense that the United States was contributorily negligent, caused the harm at the Site or assumed the risk of harm at the Site, are all insufficient and must be stricken").[23]

---

**21.** See, e.g., P. Kay Metal Answer, Eight Affirmative Defense, ¶ 41.

**22.** The court's ruling on "causation defenses" does not affect defendants' ability to assert affirmative defenses under 42 U.S.C. § 9607(b)(3), which provides that a party shall not be liable under § 9607(a) for "an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the charac-

teristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions." See *Monsanto, supra,* 858 F.2d at 167 (recognizing the defense of "total absence of causation," but finding that "under no view of the evidence could the site-owners satisfy either of the[] proof requirements" set forth in § 9607(b)(3)). Here, defendants have separately pled "unrelated third party" defenses under § 9607(b)(3). DTSC does not seek to have these stricken.

**23.** This rule is limited to governmental regulatory action, i.e., action taken to clean up a contaminated site. See *In re Paoli Railroad*

None of the defendants disputes the strict liability framework of CERCLA, nor asserts that DTSC's negligence should defeat liability. As with its opposition to the striking of its apportionment defense, however, Exide asserts that its causation defense should remain because of its relationship to divisibility.[24] Cf. *Hercules, supra,* 247 F.3d at 716 ("Many courts, however, have recognized the defense of divisibility of harm, a 'special exception to the absence of causation requirement' that in effect brings causation principles 'back into the case—through the backdoor, after being denied entry at the front door,'" quoting *Alcan Aluminum, supra,* 990 F.2d at 722); The elements of this defense are pled in Exide's Eighth and Eleventh Affirmative Defenses, however, and the matter is thus adequately preserved. The "causation defenses" DTSC seeks to strike from Exide's answer add nothing, and have the potential to bring extraneous issues into the case. Accordingly, the court finds that defenses based on DTSC's or the State's negligence, as well as defenses based on defendants' duty of care, must be stricken as insufficient.[25] Defendants are directed to file amended answers deleting such defenses within twenty days of the date of this order.

### 3. Equitable Defenses

Each defendant has asserted traditional equitable defenses such as "unclean hands," "estoppel" and "laches." DTSC contends that the weight of recent case law demonstrates that equitable defenses are not available in a CERCLA cost recovery action. As discussed above, the defenses to § 9607 are expressly limited by statute. Beyond those set forth in § 9607(b), only the judicially created doctrine of "divisibility" (and such defenses as res judicata, collateral estoppel, and accord and satisfaction (see *Blasland, Bouck & Lee, supra,* 283 F.3d at 1305, n. 14)), have been recognized as available to defendants in CERCLA actions. Given the express statutory limitation on available defenses, a number of cases have found that, despite the equitable nature of a cost recovery action, traditional equitable defenses may not be asserted. See, e.g., *Blasland, Bouck & Lee, supra,* 283 F.3d at 1303 ("A majority of the circuits that have considered the issue have found that 107(a) bars defendants in CERCLA suits from raising equitable defenses to liability"); *Town of Munster, Indiana v. Sherwin–Williams Co.,* 27 F.3d 1268, 1272 (7th Cir.1994) (holding that, in enacting CERCLA, Congress exercised its power "to restrict the

---

*Yard PCB Litigation, supra,* 790 F.Supp. at 96–97 ("... '[t]here is no question that Congress expected government agencies to shoulder their proportionate share of CERCLA response costs when they have acted as owners, operators, generators or transporters.' ... Thus, the United States could be found liable for response costs if it was an owner, operator, transporter or one who arranged for disposal under section 107(a)(1)-(4) of CERCLA.... When the United States undertakes response actions pursuant to CERCLA, it is not acting like any nongovernmental entity. The United States would be liable under section 107(a) of CERCLA if it was acting in a manner other than in its regulatory capacity. '[T]he United States is to contribute its share when it acts in a fashion analogous to that of

a business concern,'" quoting *Skipper, supra,* 781 F.Supp. at 1111, and *Western Processing, supra,* 761 F.Supp. at 730).

**24.** Exide's Opp., 6:3–27.

**25.** See Exide's Answer, Third Affirmative Defense, ¶ 3; P. Kay Metals Answer, Third, Ninth, Tenth Affirmative Defenses, ¶¶ 36, 45, 44; Quemetco's Answer, Sixth Affirmative Defense, ¶ 6; RSR's Answer, Sixth Affirmative Defense, ¶ 6; Alco Pacific's Answer, Sixth Affirmative Defense, ¶ 6; Kirk's Answer, Sixth Affirmative Defense, ¶ 6; J.L. Shepherd's Answer, Affirmative Defenses, ¶ 9. Certain of these defenses are cast as "failure to mitigate" defenses. The court addresses this characterization *infra* at 1040–41.

district courts' equity jurisdiction"); *Velsicol Chem. Corp. v. Enenco., Inc.*, 9 F.3d 524, 530 (6th Cir.1993) ("The clear language of ... 42 U.S.C. § 9607(a)(b), manifests the congressional intent to foreclose any non-enumerated defenses to liability.... In concluding the district court erred by applying the doctrine of laches, we recognize that a cost recovery claim is equitable in nature.... Theoretically this would allow equitable defenses to exist. We also recognize that some district courts have allowed non-enumerated equitable defenses to exist in CERCLA cost recovery litigation on that ground. Nonetheless, we are reluctant to deviate from the plain statutory language of section 107").

At one time there was a split of authority regarding the availability of equitable defenses in CERCLA actions. See *United States v. Iron Mountain Mines*, 812 F.Supp. 1528, 1546 (E.D.Cal.1992) ("Courts are divided on the question whether equitable defenses are available in section 107 cases"). Thus, defendants are able to cite cases in which courts permitted the assertion of equitable defenses against CERCLA plaintiffs. See, e.g., *United States v. Fairchild Industries, Inc.*, 766 F.Supp. 405, 414 (D.Md.1991) ("This Court is not convinced that equitable defenses may be asserted as defenses to liability under § 107(a) and perhaps in the final analysis will find defendants' equitable defenses unavailing either under the facts or the law. At present, however, the Court will retain the defenses of unclean hands, waiver, and estoppel subject to further devel-

opment of the record. It would be inappropriate at this early stage to strike these defenses"); *United States v. Moore*, 703 F.Supp. 460, 462 (E.D.Va.1988) (declining to strike equitable defenses of estoppel, unclean hands and illegality, and recognizing that other courts had permitted such defenses); *United States v. Dickerson*, 640 F.Supp. 448, 451 (D.Md.1986) (allowing estoppel as an equitable defense).

As DTSC notes, however, defendants' authority is dated, and some of it has been implicitly overruled. See *Town of Munster, supra,* 27 F.3d at 1270 (stating that the court "join[ed] the majority of courts, including the Third, Sixth, and Eighth Circuits, in holding that CERCLA does not permit equitable defenses to § 107 liability, although we ... conclude that equitable factors may be considered in the allocation of contribution shares").[26] Moreover, even those cases cited by defendants that have not been overruled are of minimal value, as their reasoning is no longer persuasive. In *Fairchild, supra,* 766 F.Supp. at 414, for example, the court cited as one reason not to prohibit equitable defenses the fact that an overly strict reading of § 9607 might bar "fundamental defenses such as res judicata."[27] Later cases, however, have differentiated between defenses such as res judicata and collateral estoppel, on the one hand, and equitable defenses such as unclean hands or waiver, on the other. The former are permitted in CERCLA cost recovery actions; the latter are not. See, e.g., *Town of Munster, supra,* 27 F.3d at 1272 (hold-

---

**26.** The Seventh Circuit's decision in *Town of Munster* issued on June 27, 1994. The Northern District of Indiana's decision in *United States v. Martell*, 844 F.Supp. 454 (N.D.Ind. 1994) issued on February 8, 1994, while the Eastern District of Wisconsin's decision in *National Acceptance Co. of America v. Regal Prods. Inc.*, 155 F.R.D. 631 (E.D.Wis.1994) issued on April 26, 1994. *United States v. Walerko Tool & Engr. Corp.*, 784 F.Supp. 1385

(N.D.Ind.1992), of course, was decided two years earlier in 1992. All of these cases, cited by defendants, are thus inconsistent with the circuit court's later pronouncement in *Town of Munster.*

**27.** Even the *Fairchild* court acknowledged that these defenses could be considered "bars to suit" rather than "defenses to liability." *Fairchild, supra,* 766 F.Supp. at 413, n. 15.

ing that defendant could assert statute of limitations, res judicata and collateral estoppel without running afoul of the CERCLA limitation on equitable defenses, because these defenses "interpose[] a legal or statutory shield against having to litigate (or relitigate) the issue or case"). See also *Blasland, Bouck & Lee, supra*, 283 F.3d at 1305, n. 14 (citing *Town of Munster*).

■ Recent cases, moreover, including the decisions of other district courts in the Ninth Circuit, uniformly prohibit the assertion of equitable defenses. See *Iron Mountain Mines, supra*, 812 F.Supp. at 1546 ("Cases precluding equitable defenses are more persuasive than those allowing the defenses for the simple reason that the former comport with the statute while the latter do not"); *United States v. Stringfellow*, 661 F.Supp. 1053, 1061 (C.D. Cal.1987) (granting a motion to strike and finding that "the only affirmative defenses that can be asserted to liability under section 107(a) are those listed in section 107(b)"); *United States v. Shell Oil Co.*, CV 91–0589–RJK, 1992 WL 144296, * 8 (C.D.Cal. Jan.16, 1992) ("The Court cannot envision clearer language eliminating the possibility of any other defenses than those enumerated").[28] Finally, the Ninth Circuit has stated that a CERCLA "declaratory judgment plaintiff must base its claim of nonliability on one or more of the statutory affirmative defenses." *Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 799 F.2d 1312, 1316–17 (9th Cir. 1986). While the court's observation does not explicitly bar the assertion of equitable defenses by defendants in cost recovery actions, it emphasizes the statutory limitation on defenses under CERCLA. See also *State of California v. Montrose Chemical Corp.*, 104 F.3d 1507, 1518, n. 9 (9th Cir.1997) ("[L]iability [under § 9607] is joint and several, subject to the defenses set forth in § 9607(b)"). In sum, the court agrees with other district judges in this circuit and with the weight of recent case authority nationwide that traditional equitable defenses to liability are not available to defendants in CERCLA cost recovery actions under § 9607. It accordingly strikes such defenses, and directs defendants to file amended answers deleting such defenses within twenty days of the date of this order.[29]

#### 4. Failure To Mitigate, Failure To Give Notice And DTSC's Contribution To Contamination Defenses

■ A number of defendants have asserted DTSC's failure to mitigate damages as an affirmative defense. As noted earlier, DTSC contends that the government's actions do not provide the basis for any defense to CERCLA liability. Under the statute, if a governmental agency's cleanup efforts comport with the National Contingency Plan ("NCP"), they provide no defense to PRP liability. See 42 U.S.C. § 9607(a)(4)(A) (covered defendants are liable for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency

---

28. But see *Mardan Corp. v. C.G.C. Music, Ltd.*, 600 F.Supp. 1049, 1059 (D.Ariz.1984) allowed the defense of unclean hands in a *private* recovery action.

29. See Exide's Answer, Fifth Affirmative Defense, ¶ 5; Lead Products Co.'s Answer, Eighth Affirmative Defense, ¶ 41; Quemetco's Answer, Sixth Affirmative Defense, ¶ 6; RSR's Answer, Sixth Affirmative Defense, ¶ 6; J.L. Shepherd's Answer, Affirmative Defenses, ¶¶ 11, 12. Certain of these defenses are cast as "failure to mitigate" defenses. DTSC also challenges defendants' "equitable contribution," "indemnification," and "failure to mitigate" defenses under the rubric of "equitable defenses." As these have been addressed in other sections of this order, the court does not consider them further here.

plan"); *United States v. Outboard Marine Corp.*, 789 F.2d 497, 506 (7th Cir.1986) (noting that inconsistency with the NCP's cost-effectiveness provision, 42 U.S.C. § 9605(7), is an acceptable defense to a CERCLA cost recovery action). Other challenges to the reasonableness of the government's clean-up activities may not be asserted. See, e.g., *Kramer I, supra*, 757 F.Supp. at 429 ("CERCLA does not impose a duty upon the Government to mitigate response costs"); *Marisol, supra*, 725 F.Supp. at 841 ("[T]he court finds no persuasive authority which imposes a legal duty upon the Government to mitigate damages in a CERCLA action"); *Kelley, supra*, 714 F.Supp. at 1450 ("[T]he Court concludes that because § 107 imposes no duty upon the United States to mitigate costs, this defense is insufficient as a matter of law and will be stricken").

As for defenses asserting that DTSC contributed to the contamination because it delayed in commencing clean-up and/or did not act reasonably in conducting clean-up, the agency's negligence in remediating a site does not, as noted earlier, provide a defense to CERCLA liability.[30] While defendants could bring a § 9613(f) contribution counterclaim against DTSC asserting that it is a PRP responsible for contamination of the site, no defendant has filed such a counterclaim.[31] Moreover, with the exception of Exide, no defendant has alleged that DTSC may be a PRP under § 9607(a).[32] Thus, it is apparent that the "contribution to contamination" defenses that are asserted concern DTSC's remediation efforts as opposed to its alleged contamination of the site as an owner or operator. For this reason, they must be stricken.[33]

**30.** See section II.B.2, *supra*.

**31.** Such a counterclaim could not be based on DTSC's negligent clean-up ore remediation. See, e.g., *Atlas Minerals, supra*, 797 F.Supp. at 419 ("CERCLA counterclaims against the EPA for actions undertaken by the EPA in conjunction with cleanup activities ... are clearly barred"); *In re Paoli Railroad Yard PCB Litigation, supra*, 790 F.Supp. at 97 ("Congress specifically rejected an amendment to CERCLA that would make government negligence a separate defense to CERC-LA 107(a) liability. Allowing contribution counterclaims in this situation would undermine Congress' intent to ensure that those who benefit financially from a commercial activity should internalize the health and environmental costs of that activity into the costs of doing business"); *United States v. Azrael*, 765 F.Supp. 1239, 1244–45 (D.Md. 1991) ("... several courts have held that the language of Section 120 does not waive sovereign immunity when the United States is engaged in cleanup activities at a hazardous waste site. This Court agrees with the reasoning of these decisions.... Moreover, since CERCLA's waiver of a state's immunity and that of the federal government are 'virtually identical,' ... the[se] ... decisions apply with equal authority to the contribution counter-

claims asserted against Maryland"); *Western Processing, supra*, 761 F.Supp. at 731 ("CERCLA provided for quarrels with remedial efforts to be addressed in a cost recovery action ... and in comparison with the National Contingency Plan. To the extent that RSR's contribution claims are based upon the EPA's regulatory activities, RSR has failed to state a claim upon which relief can be granted"). Rather, it would have to allege DTSC's liability as a PRP. See *Dartron Corp. v. Uniroyal Chem. Co., Inc.*, 917 F.Supp. 1173, 1182 (N.D.Ohio 1996) ("A prerequisite for liability under § 9613(f) [the contribution statute] is status as a covered person under 9607(a)").

**32.** See Exide Answer, Ninth Affirmative Defense, ¶ 9.

**33.** Exide attempts once again to tie its failure to mitigate/contribution to contamination defense to divisibility. In combination, Exide's divisibility and "reasonable basis for apportioning liability" defenses are adequate to preserve the issue. To the extent failure to mitigate is linked in some way to divisibility, assertion of it as a separate defense would be redundant. To the extent it is not so linked, the defense is legally insufficient for the reasons stated above.

■ The same is true of defendants' failure to give notice defenses. There is no requirement under CERCLA that the government give PRPs notice of its intent to clean-up hazardous waste, or an opportunity to correct the hazardous conditions. See *Rohm and Haas Co., supra,* 939 F.Supp. at 1152 ("Owens–Illinois also states as [an] affirmative defense[] what we interpret as USA–EPA's and NJDEP's failure to ... provide notice.... Th[is] defense[] must fail as well. 'CERCLA imposes no statutory or procedural prerequisites to bringing a section 107(a) response cost recovery action,'" quoting *Kramer I,* 757 F.Supp. at 420); *Marisol, supra,* 725 F.Supp. at 840–41 ("... any defenses offered by the instant defendants which argue[] that liability for response costs may be excused because of the Government's failure to take certain statutory or procedural steps before bringing this action, are insufficient as a matter of law. These defenses include, *inter alia,* the claims that the defendants were entitled to notice from the Government under § 104 of CERCLA .... The court will, therefore, grant the Government's motion to strike these defenses"); *Kelley, supra,* 714 F.Supp. at 1446–47 ("[T]here are no notice requirements applicable to this type of action"). The parties asserting a notice defense—J.L. Shepherd and P. Kay Metal Supply—offer no contrary authority. Accordingly, the failure to give notice defenses must also be stricken.

Defendants may replead their failure to mitigate defenses as defenses based on DTSC's failure to comply with the NCP, to the extent such a defense has not already bee pled and to the extent it is warranted on the facts as presently known. The defenses that presently assert failure to mitigate, DTSC's contribution to contamination and failure to give notice, however, are stricken, and defendants are directed to file amended answers within twenty days of the date of this order deleting such defenses.[34]

### 5. Necessity/Cost–Effectiveness Defenses

■ J.L. Shepherd, P. Kay Metal Supply, RSR, Quemetco and Exide has each asserted as an affirmative defense the fact that DTSC's actions were unecessary and/or not cost-effective. DTSC requests that these defenses be stricken because the amount of response costs incurred can be challenged only if it is "arbitrary and capricious."[35] As noted, the fact that a government agency's remediation effort is inconsistent with the NCP is a proper defense under CERCLA. Cost-effectiveness may be a component of compliance with the NCP. See 42 U.S.C. § 9605(7) (directing that the NCP include "means of assuring that remedial action measures are cost-effective over the period of potential exposure to the hazardous substances or contaminated materials"). Divorced from the NCP, cost-effectiveness and necessity are not defenses to liability for government clean-up costs. See *United States v. Akzo Nobel Coatings, Inc.,* 990 F.Supp. 892, 895 (E.D.Mich.1998) ("As a threshold matter, I stress that the NCP does not require response cost items to be 'reasonable,' 'proper' or 'cost-effective' in order for the United States to recover its response costs. My inquiry is limited to a determination that the costs arose out of actions that comported with the NCP");

---

34. See Exide's Answer, Third, Seventh Affirmative Defenses, ¶¶ 3, 7; P. Kay Metals Answer, Ninth, Tenth Affirmative Defenses, ¶¶ 45, 44; Quemetco's Answer, Sixth Affirmative Defense, ¶ 6; RSR's Answer, Sixth Affirmative Defense, ¶ 6; Alco Pacific's Answer, Sixth Affirmative Defense, ¶ 6; Kirk's Answer, Sixth Affirmative Defense, ¶ 6; J.L. Shepherd's Answer, Affirmative Defenses, ¶ 9.

35. Pl.'s Reply, 16:4–17:20.

*Kramer I, supra,* 757 F.Supp. at 436 ("[T]erms used by the defendants in their affirmative defenses such as 'proper' or 'improper,' 'remote, speculative and contingent,' and 'unreasonable, duplicative and not cost-effective,' do not state an appropriate challenge to the propriety of the government's response costs, and will be stricken"); *Shell Oil Co., supra,* 1992 WL 144296 at * 9 (citing *Kramer I,* and stating "[t]hese defenses are inappropriate except to the reference to the national contingency plan"). See also *United States v. Northeastern Pharmaceutical & Chemical Co. ("NEPACCO"),* 810 F.2d 726, 746 (8th Cir.1986) ("The statutory language itself establishes an exception for costs that are inconsistent with the NCP, but appellants, as the parties claiming the benefit of the exception, have the burden of proving that certain costs are inconsistent with the NCP and, therefore, not recoverable").

Each of J.L. Shepherd, P. Kay Metal Supply, RSR, Quemetco and Exide has asserted the defense of inconsistency with the NCP. To the extent those defenses reference the cost-effectiveness of DTSC's remediation, the court concludes, based on the plain language of § 9605(7), that the language may stand. To the extent the defenses assert that DTSC's response costs were not necessary or reasonable, they add an element not contemplated by the statute. Accordingly, the defenses are, to this extent stricken, and the court directs defendants to file amended answers within twenty days of the date of this order that replead the defenses to eliminate references to necessity.[36]

#### 6. Indispensable/Responsible Parties Defenses

J.L. Shepherd and P. Kay Metals Supply have both asserted the defense of failure to join indispensable parties. In its opposition to this motion (in which P. Kay Metals joined), J.L. Shepherd concedes that the defense should be withdrawn. Because the defense does not appear to be available (see, e.g., *Hunter, supra,* 70 F.Supp.2d at 1102–03 (discussing PRPs' joint and several liability in a CERCLA suit brought by United States or a state); *Fairchild, supra,* 766 F.Supp. at 413 ("The United States need not sue every potentially responsible party in order to bring a cost recovery action")), the court grants DTSC's motion to strike, and directs defendants J.L. Shepherd and P. Kay Metals Supply to file amended answers within twenty days of the date of this order deleting the defense.

#### 7. Failure To State A Claim Upon Which Relief Can Be Granted

J.L. Shepherd has asserted as an affirmative defense DTSC's failure to state a claim upon which relief can be granted. DTSC contends the allegation should be stricken, as it has stated all the elements of a cost recovery claim under CERCLA. Where the defense is asserted in a party's answer, rather than as a Rule 12(b)(6) motion, plaintiff bears the burden pursuant to Rule 12(f) of demonstrating that there is no question of fact or significant question of law that precludes assertion of the defense. Moreover, there is little prejudice in permitting such a defense, as it generally has the same effect as a general denial, and the content of the pleadings is fixed. See *County Vanlines Inc. v. Experian Information Solutions, Inc.,* 205 F.R.D. 148, 153 (S.D.N.Y.2002) (" 'Furthermore, it is well settled that the failure-to-state-a-claim defense is a perfectly appropriate affirmative defense to include in the answer.' ... Although the defense is argu-

**36.** See Exide's Answer, First Affirmative Defense, ¶ 1; P. Kay Metals Answer, Fifth Affirmative Defense, ¶ 38; J.L. Shepherd's Answer, Affirmative Defenses, ¶ 8.

ably redundant in that it is essentially a general denial, 'there is no prejudicial harm to plaintiff and the defense need not be stricken' "); *Securities and Exchange Commission v. Toomey*, 866 F.Supp. 719, 723 (S.D.N.Y.1992) (finding that an affirmative defense of failure to state a claim upon which relief could be granted should not be stricken because there was no prejudice to plaintiff). *See also Oppel v. Empire Mut. Ins. Co.*, 92 F.R.D. 494, 498 (S.D.N.Y.1981) (finding that although affirmative defense of failure to state a claim was redundant, because it had the same effect as a general denial, there was no prejudice to plaintiff and the defense need not be stricken).

DTSC argues it has pled (1) that the site is a "facility," (2) that a "release" or "threatened release" of hazardous substances occurred, (3) that the government incurred costs in responding to the release or threatened release and (4) each of the defendants is liable. These are the elements of a claim for recovery of clean-up costs under CERCLA. See *United States v. Chapman*, 146 F.3d 1166, 1169 (9th Cir. 1998) (noting that these elements establish a *prima facie* case under § 9607). See also *United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373, 1379 (8th Cir.1989). Because it has alleged the elements of a *prima facie* case, DTSC contends J.L. Shepherd's defense should be stricken. Certain courts have adopted such logic. See, e.g., *Rohm & Haas Co.*, *supra*, 939 F.Supp. at 1151 (striking the affirmative defense of failure to state a claim as "legally insufficient" where government had alleged a *prima facie* case of liability under § 9607); *Iron Mountain Mines, supra*, 812 F.Supp. at 1535–36 (striking a defense based on failure to state a claim, as there was no real question

that plaintiffs had alleged "formally sufficient" claims for relief under § 9607); *Fairchild, supra*, 766 F.Supp. at 408 ("There is no issue of fact: [the defense of failure to state a claim] relates only to the sufficiency of plaintiff's allegations. Defendants may ultimately prevail on one or more of their affirmative defenses; this is irrelevant to the issue of the sufficiency of the allegations").

■ Citing the Second Circuit's decision in *Salcer v. Envicon Equities Corp.*, 744 F.2d 935 (2d Cir.1984), J.L. Shepherd counters the motion should be denied because DTSC's chance of success cannot at this stage be established to a legal certainty.[37] In *Salcer*, there were "substantial and disputed" legal issues regarding the sufficiency of the claim. *Id.* at 939. Here, based on the comments of counsel at the scheduling conference, it appears there are similarly substantial legal issues regarding the applicability of the recycling exemption. See *State of New York v. Almy Bros., Inc.*, 971 F.Supp. 69, 71 (N.D.N.Y. 1997) (declining to strike a defense asserting failure to state a claim where the defendant suggested at least one scenario in which it could prevail on such a defense). Additionally, there is no prejudice to DTSC in allowing the defense to remain. *Venta (bvba) v. Top Disposal II, Inc.*, No. 00 C 3172, 2001 WL 111235, * 1, n. 2(N.D.Ill. Feb. 08, 2001) ("As a hypertechnical point, some courts have maintained that 'failure-to-state-a-claim' may not be an affirmative defense, because such a claim attacks the legal sufficiency of the pleading, rather than raising a matter outside the pleading. . . . However, a number of courts in the Northern District of Illinois have refused to strike a failure-to-state-a-claim defense merely because it re-

---

37. Defendant J.L. Shepherd & Associates' Opposition to DTSC's Motion ("Shepherd's Opp."), 7:22–27.

sponds to matters in the pleadings, as opposed to raising new matters"). Accordingly, the court declines to strike J.L. Shepherd's defense alleging failure to state a claim upon which relief can be granted.

### 8. Reservation Of Defenses

Lead Products' answer purports to reserve its right to assert further affirmative defenses. In its opposition to DTSC's motion to strike, Lead Products clarifies that it will assert new defenses only in compliance with the procedural requirements relating to the pleading of new matter (e.g., by moving to amend or securing a stipulation regarding amendment). So understood, DTSC has no objection to the allegation.[38] For this reason, the court denies the motion to strike Lead Products' reservation of the right to assert further affirmative defenses.

### C. Prayer For Attorneys Fees

P. Kay Metals Supply, Exide, and Lead Products, have included a prayer for attorneys' fees in their respective answers. DTSC contends there is no possibility that defendants can recover attorneys' fees even if they were to prevail in this action.[39]

Courts do not generally award fees to prevailing defendants in the absence of a statutory or contractual fee-shifting provision. See *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683–84, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) (noting that under the American Rule, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). Lead Products concedes that § 9607 is silent on awards of attorneys' fees to prevailing defendants, but argues that at least one court

has allowed defendants to seek attorneys' fees in a cost recovery action. See *United States, State of California ex rel. Dept. of Fish and Game v. Montrose*, 788 F.Supp. 1485, 1495 (C.D.Cal.1992). In *Montrose*, the court allowed defendants to seek attorneys' fees from the state "to the extent [the defeat[ed] or diminishe[d] California's claims, if any, for attorneys['] fees and costs against the Defendants]." *Id.* The import of this ruling is not entirely clear.

Exide argues that it may be entitled to recover attorneys' fees under 42 U.S.C. § 9627(j) if it is successful in asserting the "recycling exemption" as to claims subject to equitable contribution. Section 9627(j) provides that "[a]ny person who commences an action in contribution against a person who is not liable by operation of this section shall be liable to that person for all reasonable costs of defending that action, including all reasonable attorney's and expert witness fees." 42 U.S.C. § 9627(j). See also 42 U.S.C. § 9607(p)(5). As can be seen, this statute is applicable only to contribution actions; it does not extend to cost recovery actions such as that which DTSC has brought.

P. Kay Metals Supply contends that attorneys' fees may be recoverable if the court treats defendants' answers as cross-claims against their co-defendants for contribution. As noted earlier, however, no such cross-claims have been filed. Defendant further asserts that fees may be awarded "depending on the Plaintiff's action in characterizing and remediating the site."[40] This language appears in P. Kay Metals Supply's answer as part of its mitigation defense. It is not clear how a defense that is not permitted under CERCLA could support an award of attorneys' fees in defendant's favor.

---

**38.** DTSC's Reply Memorandum of Points and Authorities ("Pl.'s Reply"), 20:8–16.

**39.** Pl.'s Memo., 19:5–22.

**40.** P. Kay Metals Supply Opp., 3:16–17.

■ The face of the statute does not indicate an intention to permit an award of attorneys' fees by a prevailing defendant in a CERCLA cost recovery action. Cf. *Key Tronic v. United States*, 511 U.S. 809, 818–19, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994) ("... Congress included two express provisions for fee awards in SARA provisions without including a similar provision in either § 113, which expressly authorizes contribution claims, or in § 107, which impliedly authorizes private parties to recover cleanup costs from other PRP's. These omissions strongly suggest a deliberate decision not to authorize such awards").[41] As the court can presently discern no other authority upon which fees could be recovered from the State,[42] it grants DTSC's motion to strike the attorneys' fees prayers.

### D. Demand For Jury Trial

J.L. Shepherd filed a jury trial demand on April 15, 2002. DTSC contends there is no right to a jury trial in a CERCLA cost recovery action, as the suit essentially seeks the equitable remedy of restitution. See generally *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 234 (9th Cir. 1976) (noting that restitution is an equitable remedy); *United States v. State of Louisiana*, 339 U.S. 699, 706, 70 S.Ct. 914, 94 L.Ed. 1216 (1950) ("The Seventh Amendment [is] applicable only to actions at law"). But see *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 714–15, 151 L.Ed.2d 635 (2002) (explaining that " 'restitution is a legal remedy when ordered in a case at law and an equitable remedy ... when ordered in an equity case,' and whether it is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought" (citations omitted)).

Substantial case law supports the conclusion that CERCLA cost recovery actions are equitable in nature and thus that no jury trial is available.[43] See, e.g., *Hatco Corp. v. W.R. Grace & Co. Conn.*, 59 F.3d 400, 412–14 (3d Cir.1995) (holding that the parties are not entitled to a jury trial in suits brought under §§ 9607 and 9613); *NEPACCO, supra*, 810 F.2d at 749 (disagreeing with defendant's characterization of response costs as legal damages, and holding that defendant was not entitled to a jury trial "[w]hen the government seeks recovery of its response costs under CERCLA ..., [because] it is in effect seeking equitable relief in the form of restitution or reimbursement of the costs it expended in order to respond to the health

---

**41.** While attorneys' fees might properly be awarded in connection with a claim for contribution under § 9627(j), no defendant has yet asserted such a claim. Accordingly, this statute provides no basis for inclusion of a prayer for attorneys' fees in defendants' answers.

**42.** Compare *Andrews v. United States*, 122 F.3d 1367 (11th Cir.1997) (upholding award of attorneys' fees to plaintiffs who brought CERCLA claims against the United States under the Equal Access to Justice Act).

**43.** The court has identified one case in which a district court refused to strike a CERCLA jury demand and concluded that the defendant had a right to jury trial. See *United States v. Carolawn Co.*, 1984 HWLR 6207 (D.S.C. Sept. 13, 1984). In their treatise on environmental litigation, Allan Topol and Rebecca Snow report that *Carolawn* involved a "bench ruling denying a motion by the U.S. to strike a jury demand claim." Allan Topol & Rebecca Snow, SUPERFUND LAW AND PROCEDURE, § 7.13 (1992). They explain that the *Carolawn* court "found that the defendants' constitutional right to a jury trial outweighed the precedential force of the long line of CERCLA cases that had denied such a right." *Id.* Ultimately, this ruling was not reviewed, however, as the matter was settled and no jury was empaneled. Topol and Snow describe the case as a "glaring exception" to the multitude of decisions holding that there is no right to jury trial in CERCLA cost recovery cases. *Id.*

and environmental danger presented by hazardous substances"); *Metal Processing Co. v. Amoco Oil Co.*, 173 F.R.D. 244, 246 (E.D.Wis.1997) (holding that parties are not entitled to a jury trial in suits brought under § 9607 because CERCLA relief is equitable in nature); *Dartron Corp. v. Uniroyal Chem. Co., Inc.*, 917 F.Supp. 1173, 1184 (N.D.Ohio 1996) (finding that the parties are not entitled to a jury trial in suits brought under § 9607, but submitting questions of breach of contract to the jury and reserving the possibility that the court would empanel an advisory jury to address apportionment of damages); *Tri-County Business Campus Joint Venture v. Clow Corp.*, 792 F.Supp. 984, 997 (E.D.Pa. 1992) (refusing to re-examine settled case law holding that there is no right to jury trial in CERCLA recovery claims); *United States v. Mottolo*, 605 F.Supp. 898, 912–13 (D.N.H.1985) ("[N]o Seventh Amendment right to jury trial attaches where plaintiffs seek merely equitable relief, the return of monies expended for the cleanup of hazardous waste. Plaintiffs seek restitution, that is, to restore the status quo by receiving their rightful reimbursement. This restitution remedy is under the jurisdiction of a court of equity, and there is no jury trial right where purely equitable relief is sought").

■ While J.L. Shepherd cites several cases in which CERCLA liability was purportedly determined by a jury, DTSC is apparently correct when it notes that none of the juries actually resolved questions of civil liability under CERCLA. See *Blasland, Bouck & Lee, supra*, 283 F.3d at 1289 ("All of the claims but the CERCLA claims were tried to a jury, which found in favor of Blasland on its breach of contract claim and in favor of the City on its professional negligence (malpractice) and breach of contract counterclaims. The CERCLA claims were then tried to the court, which ruled in favor of Blasland and against the City"); *Bob's Beverage, Inc., v. Acme, Inc.*, 264 F.3d 692, 695 (6th Cir.2001) ("the district court issued Findings of Fact, Conclusions of Law, and a Judgment against the Acme Defendants in the amount of $411,467.44. The court found that the Merkel Defendants were not liable"); [44] *Louisiana–Pacific Corp. v. ASARCO*, 24 F.3d 1565, 1571 (9th Cir.1994) ("The remaining state law claims (HWMA, WPLA and trespass) were tried to a jury. The CERCLA claims were tried to the court"); *Jones–Hamilton Co. v. Beazer Materials & Services*, 973 F.2d 688, 691 (9th Cir. 1992) ("The district court granted summary judgment in favor of Beazer as to J–H's duty to indemnify Beazer, and held that the indemnification clause barred J–H's claim for contribution. It also denied J–H's motion for partial summary judgment on the issue of whether Beazer had 'arranged for the disposal' of toxic substances. In addition, the district court awarded attorneys' fees to Beazer"). Only in *United States v. Hansen*, 262 F.3d 1217 (11th Cir.2001), does it appear a jury was employed to adjudicate CERCLA issues. This, however, was plainly a criminal case, where the defendant had a Seventh Amendment right to jury trial.

Because the court finds that there is no right to jury trial in the present action, it strikes J.L. Shepherd's jury demand, and directs that it file an amended answer deleting the demand within twenty days of the date of this order.

---

**44.** The West syllabus for this case, which is not part of the court's opinion, refers, apparently in error, to the entry of judgment on a "jury verdict." Whether a jury was involved in some part of the trial is unclear, as there is no reference to a jury or to a jury verdict in the opinion. What is clear is that CERCLA liability was determined by the court, which issued findings of fact and conclusions of law.

**1048** 

### III. CONCLUSION

For the reasons stated, the court grants in part and denies in part DTSC's motion to strike. The following affirmative defenses are stricken:

Alco Pacific, Inc.: Sixth Affirmative Defense

Morris P. Kirk: Sixth Affirmative Defense

Exide Technologies: First (references to necessity only), Third, Fifth, Sixth, Seventh, and Ninth Affirmative Defenses

P. Kay Metals Supply, Inc.: Third, Fifth (references to necessity only), Ninth, and Tenth Affirmative Defenses

Lead Products Co., Inc.: Eighth Affirmative Defense

Quemetco, Inc.: Sixth Affirmative Defense

RSR Corp.: Sixth Affirmative Defense

J.L. Shepherd and Associates: Seventh, Eighth (references to necessity only), Ninth, Eleventh, and Twelfth Defenses

The court grants DTSC's motion to strike the attorneys' fees prayers found in the answers filed by defendants P. Kay Metals Supply, Exide, and Lead Products Co. It further strikes defendant J.L. Shepherd's jury trial demand. These rulings are without prejudice to defendants' right to file a motion requesting permission to reassert a defense or defenses if discovery demonstrates that the facts are other than as alleged in the pleadings or if there is some legal basis permitting assertion of the defense. The balance of the motion to strike is denied. Defendants are directed to file amended answers in accordance with this order within twenty (20) days of the date hereof.